**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JASON LEOPOLD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-cv- 01923-RDM |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. SECRET SERVICE, *et al,* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REQUEST FOR**
**PRE-SUMMARY JUDGMENT MOTION CONFERENCE**

Pursuant to Rule 10(a) of this Court's Standing Order in Civil Cases, ECF No. 6, Plaintiff

Jason Leopold respectfully requests a pre-summary judgment motion conference.

Plaintiff, an investigative reporter, filed a seven-item Freedom of Information Act request

with Defendants for various records regarding former President Trump's removal of documents to

Mar-a-Lago.   Plaintiff sued after Defendants failed to respond within FOIA's deadlines.

Defendants then searched for emails responsive to three of the request's seven items and found no

responsive records.  It refused to search text messages, declined to search for four of the items,

and employed just two narrow keyword strings.  The sole issue on summary judgment is the

adequacy of Defendants' search.

Defendants bear the burden to show the adequacy of their search.  "An agency fulfills its

obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably

calculated to uncover all relevant documents.'"  *Valencia-Lucena v. Coast Guard*, 180 F.3d 321,

325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  As

Plaintiff intends to show in his motion for summary judgment, the search was inadequate in three

ways.

*First*, Defendants refused to search text messages without a sound basis.  Because it is well-documented that the Secret Service uses text messages, which the Secret Service does not deny, a text message search was required.[1]  *See Jud. Watch, Inc. v. DOJ*, 373 F. Supp. 3d 120, 127 (D.D.C. 2019) (ordering search of text messages where there was a "documented use of text messages").  Defendants argue that their refusal was justified because the Secret Service is not responsible for storing presidential records or investigating their removal, there were no obvious custodians, and the email search turned up no responsive records.  Each is wrong.

Whether or not the Secret Service is directly responsible for storing presidential records, its agents were in close physical proximity to former President Trump when the records were transported to Mar-a-Lago, housed there for at least a year, and then retrieved from Mar-a-Lago by the National Archives and Records Administration ("NARA").  *See* 18 U.S.C § 3056(a)(3) (providing for Secret Service protection of former Presidents).  For example, Secret Service agents might well have had responsibility for monitoring the security of classified documents stored at Mar-a-Lago, or discovered unsecured classified documents, and discussed these things in text messages.  And given their role in securing former President Trump's residence, they were likely involved in coordinating NARA's retrieval of the records from Mar-a-Lago.  It is therefore reasonably likely that at least some Secret Service agents sent or received text messages about the records.  *See Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 143 (D.D.C. 2017) (holding

---

[1] *See* Statement of Anthony Guglielmi, Chief of Communications for the United States Secret Service on Accusations of Deleted Text Messages From DHS Inspector General (July 14, 2022), https://www.secretservice.gov/newsroom/releases/2022/07/statement-anthony-guglielmi-chief-communications-united-states-secret (stating that "the Secret Service has been fully cooperating with the Department of Homeland Security Office of Inspector General (DHS OIG) in every respect – whether it be interviews, documents, emails, or text").

agency failed to justify refusal to search messages where it merely "relied solely on assurances of the subject matter experts" that no responsive text messages existed).

As to Defendants' custodian point, the Secret Service agents who were stationed at Mar-a-Lago and their supervisors are obvious ones and should have been searched.  And as to the lack of leads in emails, Defendants' search of email was inadequate (as discussed below), and if there truly are no emails, this simply makes it more likely that responsive communications were conducted by Secret Service using text messages, consistent with Secret Service's undisputed use of text messaging to communicate.  The alternative—that there is not a single communication within the agency charged with protecting the former President and his residence 24 hours a day about the existence of Presidential records bearing classification markings stored in a basement closet at a country club with hundreds of members and countless guests and, and an inadequate lock that had to be remedied—is simply implausible.  Failure to search text messages was unreasonable because "[i]t is patently not credible that no such documentation exists."  *Kronberg v. DOJ.*, 875 F. Supp. 861, 870 (D.D.C. 1995).

***Second***, Defendants refused to search for the four items of the request that did not explicitly reference the Secret Service.  They attempt to justify that decision by stating that the request appeared to have been intended for NARA instead.  While the request does contain a clerical error in that its preamble requested records "from the National Archives and Records Administration," it was filed via email to the Secret Service's FOIA email inbox (Foia@usss.dhs.gov) and requested that the agency "disclose releasable records even if they are available publicly through other sources outside the agencies, such as NARA," which is incompatible with NARA's being the intended recipient.  *See* Compl. Ex. 1, ECF No. 1-1.  Defendants were required to liberally construe the request, *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir.

1995), and did not ask Plaintiff if he intended to request records from the Secret Service (which he did).  They should have searched for all items of the request.

Defendants are also wrong that the search was broad enough to have captured records responsive to any portion of Plaintiff's request if they had existed.  Defendants searched only emails, but the request sought records in other media.  *See* Compl. Ex. 1, ECF No. 1-1.  Plus, as discussed below, the search terms were inadequate even for the items Defendants did search.

***Third***, Defendants' email search terms were inadequate.  According to Defendants' search declaration, they used just two search strings, the second of which appears to be subsumed within the first and simply makes no sense even to have included: 1) a search of emails including both terms "Presidential records" and "Mar-a-Lago" or 2) a search of emails including the terms "classified" and "Presidential records" and "Mar-a-Lago."  This is plainly inadequate, as it would not include, for example, alternative ways of referring to either Mar-a-Lago or the records former President Trump stored there.  *See Gov't Accountability Project v. DHS*, 335 F. Supp. 3d 7, 8, 12 (D.D.C. 2018) (holding inadequate a search whose terms did not include "logical variations of the terms used to describe the subject matter being sought" because "FOIA requests are not a game of battleship").  It also would not include terms that do not duplicate Defendants' but are obviously related to the request's subject matter.  In particular, Defendants should have employed the following search terms at a minimum:

- ("national archives" OR NARA) AND box! AND (document! OR record!)
- FBI AND ("Mar-a-Lago" OR MAL)
- (Record! OR document!) AND ("top secret" OR "top-secret" OR "classified")
- ("Department of Justice" OR DOJ) AND ("Mar-a-Lago" OR MAL) AND (document! OR record!)
- ("Mar-a-Lago" OR MAL) AND "storage room" AND (document! OR record!)

These search terms are all closely connected to the request's subject matter.  The search terms referencing NARA, the FBI, and DOJ are necessary to return documents responsive to Item

2 of the request, which sought communications with those agencies.  The terms referencing "top secret" and "classified" relate to the item seeking communications regarding classified documents. The string referencing the "storage room" relates to the request for damage assessments relating to President Trump's storage of documents at Mar-a-Lago.

For the foregoing reasons, Plaintiff intends to seek summary judgment in this matter and respectfully requests a pre-summary judgment motion conference.

Dated: January 27, 2023

RESPECTFULLY SUBMITTED,

*/s/ Matthew Topic*

Attorney for Plaintiff,
JASON LEOPOLD

Matthew Topic, D.C. Bar No. IL 0037
Josh Loevy, D.C. Bar No. IL0105
Merrick Wayne, D.C. Bar No. IL 0058
Shelley Geiszler D.C. Bar No. IL 0087
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com