JASON LEOPOLD,

       Plaintiff,

v.

U.S. SECRET SERVICE,

U.S. DEPARTMENT OF HOMELAND SECURITY,
       Defendants.

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION ...............................................................................................................1

II. BACKGROUND .................................................................................................................2

A. Timing of Efforts to Recover Presidential Records from Mar-a-Lago ...............................2

B. Plaintiff's FOIA Request .....................................................................................................4

III. DISCUSSION ......................................................................................................................8

A. Legal Standard ....................................................................................................................8

B. The Secret Service's Search Amply Fulfills FOIA's Requirements ..................................8

    1. The Secret Service Conducted a Reasonable Search .................................................9

    2. A Continuation of the Search Would Be Unreasonable ..........................................12

IV. CONCLUSION .................................................................................................................14

I.      INTRODUCTION

The Secret Service is a protective and law enforcement agency, responsible for, *inter alia*, providing physical protection for former Presidents. *See* Decl. of Kevin L. Tyrrell, Supervisory Freedom of Information Act Officer for the United States Secret Service, Ex. 1 hereto ("Tyrrell Decl."), at 4 (Tyrell Decl. ¶ 6). That mission encompasses the physical security of the persons under the Secret Service's protection, but does not involve responsibility for the security, storage, or retrieval of Presidential records or, indeed, any records that might be maintained by a former President. *See id.*

This Freedom of Information Act ("FOIA") action concerns Plaintiff's request to the Secret Service for seven categories of materials comprising "documents about any Presidential records . . . that were removed from the White House to Mar-a-Lago." Dkt. 1 at 1 (Compl. ¶ 1). Although the request appeared, in framing and substance, to be directed to the United States National Archives and Records Administration ("NARA") rather than the Secret Service, the Secret Service nonetheless conducted a search of all of its email databases for broad search strings designed to have identified any potentially responsive records had they existed. In an effort to resolve this case without further litigation, the Secret Service then also asked employees who had been assigned to the Donald Trump Detail from January 2022 through March 2022 to review the text messages on their government-issued phones for any responsive records. These two searches amply satisfy FOIA's requirement that an agency conduct a search reasonably calculated to uncover any responsive records if such records exist.

Plaintiff insists that the agency must do still more, but the search already conducted by the Secret Service is more than adequate to fulfill its statutory obligations. Indeed, FOIA does not require an agency to keep searching for records when doing so would be futile. To the

contrary, the case law supports that no further search is required when there is no reasonable expectation of finding responsive records. Here, the Secret Service has explained that the responsibilities of its officers include neither protection of nor interaction with documents that a former President stores in his home. In sum, there is simply no reason to conclude that any agency records exist that would be responsive to the FOIA request at issue here.

For all these reasons, the Court should grant the instant motion, and enter judgment against the Plaintiff.

## II. BACKGROUND

### A. Timing of Efforts to Recover Presidential Records from Mar-a-Lago

Throughout 2021, NARA had ongoing communications with representatives of former President Trump in which it sought the transfer of what it perceived were missing records from his Administration. See Letter from David S. Ferriero, Archivist of the United States, to the Hon. Carolyn B. Maloney (Feb. 18, 2022), available at https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf ("Ferriero Letter") at 1; Letter from Debra Steidel Wall, Acting Archivist of the United States, to Evan Corcoran (May 10, 2022), available at https://www.archives.gov/files/foia/wall-letter-to-evan-corcoran-re-trump-boxes-05.10.2022.pdf ("Wall Letter") at 1. These communications ultimately resulted in the provision of fifteen boxes (the "Fifteen Boxes") from former President Trump to NARA in January 2022. See Ferriero Letter at 1; Wall Letter at 1; see also In Re Sealed Search Warrant, Case No. 22-MJ-8332 (S.D. Fla.) ("MJ Docket"), Affidavit in Support of an Application under Rule 41 for a Warrant to Search and Seize, ECF No. 102-1 at ¶¶ 39, 47.

"In its initial review of materials within those boxes, NARA identified items marked as classified national security information, up to the level of Top Secret and including Sensitive

Compartmented Information and Special Access Program materials.  NARA informed the Department of Justice about that discovery."  Wall Letter at 1.  Specifically, on February 9, 2022, the Special Agent in Charge of NARA's Office of the Inspector General sent a referral via email to the Department of Justice ("DOJ") (hereinafter, the "NARA Referral").  Affidavit in Support of an Application, MJ Docket ECF No. 102-1 at ¶ 24.  The NARA Referral stated that a preliminary review of the Fifteen Boxes indicated that they contained "newspapers, magazines, printed news articles, photos, miscellaneous print-outs, notes, presidential correspondence, personal and post-presidential records, and a lot of classified records."  *Id.* (internal quotations omitted).

Through its subsequent investigation, the Federal Bureau of Investigation (FBI) developed evidence indicating that even after the Fifteen Boxes were provided to NARA, dozens of additional boxes remained at 1100 S. Ocean Blvd., Palm Beach, Florida 33480 (the "Premises") that were also likely to contain classified information.  *See* United States' Response to Motion for Judicial Oversight and Additional Relief, *Trump v. United States*, 22-cv-81294 (S.D. Fl.), ECF No. 48 ("Resp. to Mot. for Judicial Oversight") at 7.  Thereafter, DOJ obtained a grand jury subpoena,[1] for which the former President's counsel accepted service on May 11, 2022.  *See* Grand Jury Subpoena, Attachment C to United States' Response to Motion for Judicial Oversight and Additional Relief, *Trump v. United States*, 22-cv-81294 (S.D. Fl.), ECF

---

[1] The former President disclosed this subpoena and a subpoena for video footage at the Premises in his submissions in *Trump v. United States*.  *See, e.g.*, *Trump v. United States*, 22-cv-81294 (S.D. Fl.), ECF No. 1 at 5–6.  Thereafter, on August 29, 2022, Chief Judge Howell in the District of Columbia authorized the government to disclose, in public filings in a related matter in the Southern District of Florida, these grand jury subpoenas and material discussed herein.

No. 48-1. On June 3, 2022, three FBI agents and a DOJ attorney arrived at the Premises to receive responsive documents from the former President's counsel and from a custodian.

Through further investigation, the FBI uncovered multiple sources of evidence indicating that the response to the May 11 grand jury subpoena was incomplete and that classified documents remained at the Premises. *See id.* Against that backdrop, and relying on the probable cause that the investigation had developed at that time, on August 5, 2022, the government applied for a search and seizure warrant, which cited three statutes: 18 U.S.C. § 793 (Willful retention of national defense information), 18 U.S.C. § 2071 (Concealment or removal of government records), and 18 U.S.C. § 1519 (Obstruction of federal investigation). *See* MJ Docket, ECF No. 17 at 3. The court authorized the search warrant, and the Government executed that search warrant on August 8, 2022.

The above-discussed investigation is continuing and, on November 18, 2022, the Attorney General announced the appointment of a Special Counsel to oversee the investigation. *See* Dep't of Justice Office of Public Affairs, Appointment of a Special Counsel (Nov. 18, 2022), *available at* https://www.justice.gov/opa/pr/appointment-special-counsel-0.

**B. Plaintiff's FOIA Request**

Plaintiff's FOIA request, dated March 11, 2022, sought:

> disclosure from the National Archives and Records Administration the following records:
>
> 1. All records, with the exception or new clippings and press releases, relating or referring to the retrieval of Presidential records from Mar-a-Lago. Please be sure to include any and all photographs of presidential records that were recovered.
>
> 2. All emails, letters, memos, text messages, reports sent and received between Secret Service officials and officials representing former President Donald Trump and officials at the National Archives, Justice Department, FBI relating

- 4 -

    or referring to Presidential records stored at Mar-a-Lago, discussions about the retrieval of those records, the Presidential Records Act and the ongoing search for Presidential records.

3. All records, with the exception of news clippings and press releases, mentioning or referring to descriptions of Trump Presidential records that were not turned over to NARA after former President Donald Trump left office.

4. Any and all letters, memos, reports, Secret Service officials have exchanged with other federal government agencies and congressional committees relating or referring to presidential records stored at Mar-a-Lago.

5. Final reports of investigation and audits and reviews relating or referring to the presence of classified information contained in Presidential records removed from the Trump White House and retrieved from Mar-a-Lago by NARA officials; and final reports of investigation and audits relating or referring to missing Presidential records from the Trump White House.

6. All emails, memos, reports, text messages, letters, criminal referrals, sent and received by Secret Service and FBI, CIA, Defense Intelligence Agency, National Security Agency, State Department, Department of Defense, and the Inspector General of the Intelligence Community, relating or referring to the presence of classified information contained in all presidential records retrieved from Mar-a-Lago.

7. All records, such as letters, memos, reports, exchanged with any Congressional committee relating or referring to the presence of classified information contained in all presidential records retrieved from Mar-a-Lago by NARA officials.

Ex. 1 at 3–4 (Tyrrell Decl. ¶ 4).

    The Secret Service received this request on March 14, 2022, and sent Plaintiff an acknowledgement letter on the same day. Ex. 1 at 3–4, 5 (Tyrrell Decl. ¶¶ 4, 8). Therein, the Secret Service noted that parts 1, 3, 5, and 7 of the request sought information within the purview of NARA, and that Plaintiff should send his request directly to that agency's FOIA officer. *See* Letter to Jason Leopold (Mar. 14, 2022), Dkt. 1-1 at 6 (listing therein the contact information for NARA's FOIA officer). The Secret Service also indicated that it would undertake a search for records responsive to parts 2, 4, and 6 of Plaintiff's request. *Id.* at 2.

At the time, the Secret Service assessed that the request had been intended for NARA, both because of its express statement that it sought "disclosure from [NARA]" and because of its focus on the storage and retrieval of Presidential records from a former President, an area for which NARA, rather than the Secret Service, is responsible.  *See* 44 U.S.C. § 2203; Ex. 1 at 4 (Tyrrell Decl. ¶¶ 5–6).  However, in an abundance of caution, the Secret Service FOIA office decided to search for documents responsive to those parts, specifically parts 2, 4, and 6, that referenced the Secret Service.  Ex. 1 at 4–5 (Tyrrell Decl., ¶ 7).

Because the Secret Service has no responsibility for the security, storage, or retrieval of Presidential records at Mar-a-Lago, nor does the Secret Service have any statutory criminal investigative responsibilities with respect to the storage and retrieval of Presidential records at Mar-a-Lago, there was no obvious set of records or appropriate division to which to send a search request form.  *See id.* at 5 (Tyrrell Decl. ¶ 9).  In order to conduct a search reasonably likely to produce records responsive to Plaintiff's FOIA request if they existed, the Secret Service FOIA office requested that the Office of the Chief Information Officer (CIO) perform the following search of all Secret Service email databases: 1) a search of emails including both terms "Presidential records" and "Mar-a-Lago" or 2) a search of emails including the terms: "classified" and "Presidential records" and "Mar-a-Lago."  *See id.*  That search yielded 3,306 potentially responsive e-mails.  *See id.* at 6 (Tyrell Decl. ¶ 10).  Each of the 3,306 e-mails located in the CIO's search were individually reviewed for responsiveness.  *See id.* (Tyrell Decl. ¶ 12).

Plaintiff initiated this action on July 5, 2022, *see* Compl., Dkt. 1, before that review was completed.  By letter dated August 8, 2022, the Secret Service advised the Plaintiff that the review was complete and that none of the potentially responsive e-mails were in fact

responsive. *See* Dkt. 1 at 6 (Tyrrell Decl. ¶ 13). The majority of the e-mails that were identified by the search were news clippings and/or press releases which Plaintiff had advised in his initial FOIA request that he was not seeking. *See id.* The remaining emails were unrelated to the subject matter of Plaintiff's request. *See id.*

By letter dated August 9, 2022, the Secret Service advised Plaintiff that although the search was directed at Parts 2, 4, and 6 of his request, any document potentially responsive to Parts 1, 3, 5, and 7 would have been located in the search given the broad nature of the search terms utilized. *See id.* (Tyrrell Decl. ¶ 14). Although the Secret Service sought suggestions from Plaintiff for additional search terms to employ, Plaintiff declined to offer any proposed search terms for months, and only did so in his pre-summary judgment motion submission to the Court on January 27, 2023. *See* Dkt. 15. Instead, during the course of the parties' discussions regarding his request, Plaintiff focused on his position that text messages should be included in the Secret Service's search. The Secret Service had not included text messages in its initial search because, at that time, the Secret Service did not have a centralized text searching capability, and an agency-wide search of every employee's text messages would have been extremely burdensome and unlikely to yield results, since the Secret Service has no responsibility for the security, storage, or retrieval of Presidential records at Mar-a-Lago, nor does the Secret Service have any statutory criminal investigative responsibilities with respect to the storage and retrieval of residential records at Mar-a-Lago. *See* Ex. 1 at 4 (Tyrrell Decl. at 4 n.1). And, for the same reason, there were no obvious custodians on whom to focus a search. *See id.*

Following the February 1, 2023, pre-summary judgment motion conference, the Secret Service decided to search text messages for responsive records, in an effort to resolve

the parties' differences without further litigation. *See* Ex. 1 at 7 (Tyrrell Decl., ¶ 16). Employees assigned to the Donald Trump Detail from January 2022 through March 2022 were asked to search their government-issued cellular phones for any text messages from that timeframe responsive to Plaintiff's FOIA request. *See id.* They did so, and provided a certification to that effect. *See id.* No responsive text messages were located. *See id.*

On April 19, 2023, the Secret Service reported the results of its additional search to Plaintiff's counsel. Plaintiff's counsel indicated that, notwithstanding completion of the additional search, Plaintiff wished to proceed with summary judgment motions.

### III. DISCUSSION

#### A. Legal Standard

FOIA cases are "typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). "A court may grant summary judgment . . . if there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Aguiar v. DEA*, 865 F.3d 730, 734 (D.C. Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations," *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012), and such agency declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

#### B. The Secret Service's Search Amply Fulfills FOIA's Requirements.

On a motion for summary judgment concerning an agency's search for responsive records, "the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). The adequacy of the search "is judged by a standard of reasonableness and

depends . . . upon the facts of each case." *Id.* (citation omitted).  An agency "can show that it conducted an adequate search by relying on '[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Spataro v. Dep't of Justice*, 279 F. Supp. 3d 191, 207 (D.D.C. 2017) (quoting *Valencia-Lucena v. U.S. Coast Guard,* 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation omitted)).  To be sufficiently detailed, an agency's affidavits must describe "what records were searched, by whom, and through what process." *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994).

### 1. The Secret Service Conducted a Reasonable Search.

In this case, Mr. Tyrell's declaration fulfills these requirements and explains why the Secret Service's search amply satisfies the agency's obligation to conduct an adequate search reasonably calculated to uncover any responsive records if such records existed.  The various parts of Plaintiff's FOIA request seek "documents about any Presidential records—including classified records—that were removed from the White House to Mar-a-Lago."  Dkt. 1 at 1 (Compl. ¶ 1).  To uncover any potentially responsive material, the Secret Service Office of the Chief Information Officer searched all Secret Service email databases for:  1) emails including both terms "Presidential records" and "Mar-a-Lago" and 2) emails including the terms "classified" and "Presidential records" and "Mar-a-Lago."  *See* Ex. 1 at 5 (Tyrrell Decl., ¶ 9). That search retrieved 3,306 potentially responsive emails, and the Secret Service reviewed each of those 3,306 emails individually to determine whether it was responsive to Plaintiff's request. *See id.* at 6 (Tyrrell Decl. ¶¶ 10, 12).  The review revealed no responsive records.  *See id.* (Tyrrell Decl. ¶ 13).  Instead, the majority of the e-mails that were identified by the search were news clippings and/or press releases, which Plaintiff had advised in his initial FOIA request that

he was not seeking. *See id.* The remaining emails were unrelated to the subject matter of Plaintiff's request. *See id.*

Following the parties' pre-summary judgement motion conference, the Secret Service undertook an additional search for text messages potentially responsive to Plaintiff's request in the hope of resolving this litigation without further motions practice. *See id.* at 7 (Tyrrell Decl. ¶ 16). In particular, Secret Service employees assigned to the Donald Trump Detail from January through March 2022 each searched their respective government-issued cellular phones for text messages from that timeframe responsive to Plaintiff's request and provided a certification to that effect. *See id.* The Secret Service focused on employees assigned to the detail during that timeframe because the Court had suggested at the pre-summary judgment motion conference that it was plausible text messages may have been sent in connection with the arrival of persons on behalf of NARA at Mar-a-Lago in connection with the collection of or search for Presidential records, and January 2022 was when the Fifteen Boxes were provided by former President Trump to NARA. *See id.* The end of the timeframe employed aligned with the Secret Service's email search, which was initiated on April 1, 2023. *See id.* The text message search, as noted above, yielded no responsive records.

Taken together, the Secret Service's electronic search of all of its email databases along with this manual search of individual employees' government-issued cellular phones amply satisfies the agency's burden to conduct an adequate search. For the email search, which encompassed all Secret Service email databases, the terms employed mirrored Plaintiff's own description of his request, *see supra*; while, for the text message search, the search was even more thorough as employees manually reviewed text messages in light of Plaintiff's FOIA request.

Plaintiff's request for a pre-summary judgment motion conference identified three objections to the Secret Service's search, *see* Pl's Request for a Pre-Summ. J. Mot. Conf., Dkt. 15 ("Pl's Request"), but each of them lacks merit.

Plaintiff's first objection—that text messages should have been included in the search, *see id.* at 2–3—has been overcome by events, as the Secret Service has conducted a search of text messages, as discussed above.

Plaintiff's second objection, that the Secret Service did not search for records responsive to items 1, 3, 5, and 7 of plaintiff's request, *see id.* at 3–4, also misses the mark because although the Secret Service had initially directed its search to those subparts of Plaintiff's request that specifically referred to the Secret Service, the Secret Service subsequently notified Plaintiff that its search terms were broad enough to have captured records responsive to any portion of Plaintiff's request if they had existed. *See* Ex. 1 at 6 (Tyrrell Decl., ¶ 14). Indeed, all seven parts of the request relate to "Presidential records" and "Mar-a-Lago" and those were the search terms that the Secret Service employed.

Plaintiff's third objection, that the Secret Service should have used additional search terms, *see* Pl's Request at 4–5, likewise lacks merit. To begin with, an agency's "burden [is] to show that its search efforts were reasonable and logically organized to uncover relevant documents; it need not knock down every search design advanced by every requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191–92 (D.C. Cir. 2015) (citing *SafeCard Servs., Inc.*, 926 F.2d at 1201); *see also Liberation Newspaper v. U.S. Dep't of State*, 80 F.Supp.3d 137, 146-47 (D.D.C. 2015) *56 ("Where the search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search.") (citing *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

Here, the search string "Mar-a-Lago and Presidential records" was designed broadly to capture records potentially responsive to Plaintiff's request seeking, as Plaintiff describes it: "documents about any Presidential records—including classified records—that were removed from the White House to Mar-a-Lago." Dkt. 1 at 1 (Compl. ¶ 1). Furthermore, for several months following the agency's search, Plaintiff declined to identify any additional terms that in his view should have been included, even when the Secret Service, through counsel, asked him to do so. *See* Ex. 1 at 6 (Tyrrell Decl., ¶ 15). Plaintiff's failure to specify even a single proposed additional search term when specifically asked to do so should weigh heavily against his current position that the agency's search should have included additional terms.

**2. A Continuation of the Search Would be Unreasonable.**

Moreover, because an agency's search is judged by a standard of reasonableness, *see supra* 11–12 (discussing case law), FOIA does not require an agency to continue to search for responsive records if there is no reasonable expectation of finding such records. Indeed, as the Court put it in *MacLeod v. United States Dep't of Homeland Sec.*: "[w]here the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." *MacLeod v. United States Dep't of Homeland Sec.*, No. 15-CV-1792 (KBJ), 2017 WL 4220398, at *11 (D.D.C. Sept. 21, 2017) (quoting *Reyes v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014)). Thus, in *MacLeod*, the Court held that no search was required where the agency explained in its declaration that it did not maintain records of the kind sought by the requestor. Likewise, in *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, the Court did not require a search for certain information that the requester had sought because the agency declaration "explain[ed] why a search would be futile and is unnecessary." *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F.

Supp. 2d 83, 88 (D.D.C. 2007).[2]

In this case, too, the Secret Service has provided a detailed declaration explaining why any additional search would be futile. Specifically, My. Tyrrell explained that the Secret Service's responsibilities, as relevant to the instant case, encompass providing physical protection for former Presidents. *See* Ex. 1 at 7 (Tyrrell Decl., ¶ 6). That mission is focused on the physical security of human beings, and does not involve any responsibility for the security, storage, or retrieval of Presidential records or any records that might be maintained by a former President. *See id.* Thus, it would not be reasonable to expect that employees of the Secret Service would have any communications concerning Presidential records, whether at Mar-a-Lago or any other location.

Plaintiff asserts that "Secret Service agents might well have had responsibility for monitoring the security of classified documents stored at Mar-a-Lago, or discovered unsecured classified documents" and that "they were likely involved in coordinating NARA's retrieval of the records from Mar-a-Lago." Pl's Request at 2. But this is nothing more than unadorned speculation. Mr. Tyrrell explains that the Secret Service operates under Title 18 of the United States Code, sections 3056 and 3056A. *See* Ex. 1 at 4 (Tyrrell Decl., ¶ 6). Those provisions

---

[2] *See also, e.g., Whitaker v. Dep't of Com*, 970 F.3d 200, 209 (2d Cir. 2020) ("an agency may decline to perform a search if it reasonably determines that a search will be futile"); *Singh v. Fed. Aviation Admin.*, 783 F. App'x 753, 754 (9th Cir. 2019) (holding that the agency had "reasonably ended its search because any additional efforts to look for relevant information would have likely proven futile"); *Nat'l Immigr. L. Ctr. v. United States Immigr. & Customs Enf't*, 2015 WL 12684437, at *7 (C.D. Cal. Dec. 11, 2015) ("An agency is not required to undertake a search if it offers, in good faith, a detailed, non-[conclusory] affidavit explaining why such a search would be unnecessary or futile."). *Cf. Thomas v. Comptroller of Currency*, 684 F. Supp. 2d 29, 33 (D.D.C. 2010) (holding that no search was required where requestor had not supplied information compatible with the way agency organized its records because, in the absence of the information, "there was no reasonable expectation of finding responsive documents")

enumerate the powers, authorities, and duties of the Secret Service, and do not include either protection of classified documents, or, indeed, documents of any kind. *See* 18 U.S.C. §§ 3056, 3056A. Instead, as Mr. Tyrrell attests, the Secret Service focuses on the physical security of the people under its protection. *See* Ex. 1 at 3 (Tyrrell Decl., ¶ 6). Given that focus on the physical security of human beings, there would be no occasion for the Secret Service to review the content of documents stored by former President Trump as Plaintiff suggests "might well have" occurred. Pl's Req. at 2.

Nor is there reason to credit Plaintiff's speculation that the Secret Service might have been involved in coordinating NARA's retrieval of documents from Mar-a-Lago, *id.* at 2, since Mr. Tyrrell's declaration explains that retrieval or security of documents also would not be within the responsibilities of the Secret Service. *See* Ex. 1 at 3 (Tyrrell Decl., ¶¶ 5, 6). Therefore, there would therefore be no occasion for the Secret Service to discuss arrangements for the retrieval of documents as Plaintiff supposes.

In short, Mr. Tyrrell's declaration clarifies that the Secret Service simply does not fulfill the functions or perform the tasks that Plaintiff imagines for the agency. Plaintiff's "purely speculative claims" to the contrary are insufficient to rebut the "presumption of good faith," which the law accords to Mr. Tyrrell's declaration. *SafeCard Servs., Inc.*, 926 F.2d at 1200. The Secret Service has detailed why the search it already conducted—and then supplemented— was reasonable, and why any further efforts would be futile.

### IV.   CONCLUSION

For all the reasons explained herein, the Court should grant Defendants' motion and enter judgment for Defendants.

Dated: May 9, 2023                                        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ *Julia A. Heiman*
JULIA A. HEIMAN (D.C. Bar No. 986228)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Tel: 202-616-8480
julia.heiman@usdoj.gov

*Attorneys for Defendants*