IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD,<br><br>     Plaintiff,<br><br>v.<br><br>U.S. SECRET SERVICE,<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>     Defendants. | Civil Action No. 1:22–cv–01923–RDM |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ..................................................................................................................1

II. DISCUSSION .......................................................................................................................2

A. The Secret Service Selected Search Terms Reasonably Expected to Locate Any Responsive Records ...................................................................................................2

B. The Secret Service Reasonably Concluded that Any Further Search Would Be Futile ......6

III. CONCLUSION ...................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**                                       **PAGE(S)**

*Behar v. DHS*,
  39 F.4th 81 (2d Cir. 2022), *cert. denied* 2023 WL 3158361 (U.S. May 1, 2023) ...................... 8

*Bigwood v. United States Dep't of Def.*,
  132 F. Supp. 3d 124 (D.D.C. 2015) ............................................................................................ 3

*Bonner v. U.S. Dep't of State*,
  928 F.2d 1148 (D.C. Cir. 1991) ................................................................................................. 9

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ................................................................................................... 6

*Doyle v. DHS*,
  959 F.3d 72 (2d Cir. 2020) ......................................................................................................... 8

*Edmonds Inst. v. U.S. Dep't of Interior*,
  383 F. Supp. 2d 105 (D.D.C. 2005) ........................................................................................... 9

*Fox News Network, LLC v. U.S. Dep't of Treasury*,
  739 F. Supp. 2d 515 (S.D.N.Y. 2010) ........................................................................................ 9

*Gov't Accountability Project v. DHS*,
  335 F. Supp. 3d 7 (D.D.C. 2018) ........................................................................................... 3, 4

*Johnson v. Exec. Office for U.S. Attorneys*,
  310 F.3d 771 (D.C. Cir. 2002) ................................................................................................... 3

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
  726 F.3d 208 (D.C. Cir. 2013) ................................................................................................... 8

*Liberation Newspaper v. U.S. Dep't of State*,
  80 F. Supp. 3d 137 (D.D.C. 2015) ............................................................................................. 2

*Oglesby v. U.S. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) ..................................................................................................... 6

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ................................................................................................... 6

*Physicians for Human Rights v. Dep't of Def.*,
  675 F. Supp. 2d 149 (D.D.C. 2009) ........................................................................................... 3

*Pub. Citizen v. Dep't of State*,
  276 F.3d 634 (D.C. Cir. 2002) ............................................................................................... 9

**STATUTES**

44 U.S.C. § 2201 ................................................................................................................... 4

I.  INTRODUCTION

Defendants explained in their opening brief that, to locate records responsive to Plaintiff's Freedom of Information Act (FOIA) request, the Secret Service conducted a reasonable search of its email systems and found only thousands of pages of false positives.  *See* Defs' Mem. in Support of their Mot. for Summary J., Dkt. 23-3 ("Defs.' Mot.").  The Secret Service then went further:  the agents who had been assigned to the Donald Trump Detail during the relevant timeframe manually searched the text messages on their government-issued phones.  They, too, found no responsive records.  In his Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, Dkt. 26 ("Plaintiff's Opposition"), Plaintiff insists that FOIA requires still more.  It does not; as Defendants explained in their Motion, FOIA does not compel an agency to keep searching for records when doing so would be futile.

Plaintiff asserts that "[t]his FOIA case concerns the Secret Service's connection, if any, to presidential records former President Trump stored in his private residence in Mar-a-Lago." Pl.'s Opp'n, Dkt. 26 at 5.  But Plaintiff acknowledges that the Secret Service's functions do not include protection of or interaction with a former President's documents.  *See id.*  Indeed, the Indictment of the former President, on which Plaintiff relies throughout his Opposition, states unequivocally:  "The United States Secret Service . . . provided protection services to TRUMP and his family after he left office, including at The Mar-a-Lago Club, but it was not responsible for the protection of TRUMP's boxes or their contents.  TRUMP did not inform the Secret Service that he was storing boxes containing classified documents at The Mar-a-Lago Club."

*United States v. Trump*, 9:23-cr-80101-AMC (S.D. Fl. June 8, 2023), Dkt. 3 at 5 (Indictment ¶ 12).

Despite this confirmation of what the Secret Service has been telling Plaintiff all along, he nonetheless persists in conjuring up hypothetical ways that his proposed additional searches might locate responsive records. But those scenarios largely depend on confusion as to the scope of the request and the timing of relevant events. Plaintiff urges that responsive records might exist primarily because of the investigations now known to have unfolded during 2022 and 2023. But Plaintiff overlooks that those events had barely commenced on April 1, 2022, when the Secret Service initiated its search in this case; the kinds of records that Plaintiff posits—communications with investigators or agencies seeking information related to their equities in particular documents—all would have occurred after the date of search, if they occurred at all.

For this reason, and all the reasons explained herein and in Defendants' initial submission, the Court should deny Plaintiff's motion, grant Defendants' motion, and enter judgment for the Defendants.

## II.  DISCUSSION

### A. The Secret Service Selected Search Terms Reasonably Expected to Locate Any Responsive Records.

Defendants, in their opening brief, explained why the search terms employed in this case were reasonably calculated to lead to records responsive to every part of Plaintiff's request, and that, under such circumstances, the case law provides that the Court should not "second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015); *see* Defs' Mot., Dkt. 23-3 at 15–16. The D.C. Circuit has instructed: "FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the

court should attempt to micromanage the executive branch." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Indeed, the case law is clear that, "[i]n general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (quoting *Physicians for Human Rights v. Dep't of Def.,* 675 F. Supp. 2d 149, 164 (D.D.C.2009)).

Yet that is what Plaintiff attempts to do here. Relying on the fact-specific holding in a single district court decision, *Gov't Accountability Project v. DHS*, 335 F. Supp. 3d 7 (D.D.C. 2018), Plaintiff proposes three "general rules" that "the agency must follow," Dkt. 26 at 13, and urges that the application of those rules dictates that the Court must order an additional search using Plaintiff's preferred terms. *Id.* at 17. But *Government Accountability Project* did not purport to establish rules that must be followed by every agency search for every FOIA request. *See Gov't Accountability Project v. DHS*, 335 F. Supp. 3d at 9–13. Nor did the Court substitute the requestor's search terms for the agency's in that case. *See id.* Instead, with due deference to the agency's expertise in crafting search terms designed to uncover responsive records, the Court found that the previously used terms had been under-inclusive, but ordered the parties to confer and "engage in a good faith effort to arrive at a reasonably limited set of additional search terms that rectify the under-inclusivity . . . without being too over-inclusive." *Id.* at 13. In so holding, the Court there was guided by the principle that an agency "must liberally interpret the request and frame its search accordingly." *Gov't Accountability Project*, 335 F. Supp. 3d at 12. And that is just what the Secret Service did in this case. As discussed in Defendants' opening brief, the Secret Service liberally construed the request in this case and conducted searches of its records notwithstanding that the request, as drafted, was directed to a different agency.

Plaintiff complains that the Secret Service should not have searched for the term

- 3 -

"Presidential records," in quotation marks, but instead should have included synonyms for "records" or searched for the words "independently using a conjunction." Pl.'s Opp'n, Dkt. 26 at 13–14. Plaintiff's objections overlook that "Presidential records" is not simply a phrase that happened to have appeared in Plaintiff's request, as with the phrase "ideological test" discussed in *Government Accountability Project*. Rather, "Presidential records" is a term of art with a specific meaning under the Presidential Records Act. *See* 44 U.S.C. § 2201(2). In this context, it would make little sense to substitute a synonym for "records" or disconnect the two parts of the term and use a conjunction for the search.

Nor does Plaintiff's objection that "MAL" should have been used as a potential substitute for "Mar-a-Lago" have merit. *See* Pl.'s Opp'n, Dkt. 26 at 14–15. As evidence that the Secret Service should have searched for "MAL" in its email, Plaintiff cites only to two uses on Twitter, *see id.*, a setting in which messages are limited to 280 characters. *See* Twitter, "Counting characters when composing tweets," *available at* https://developer.twitter.com/en/docs/counting-characters#:~:text=Background,reserved%20for%20commands%20and%20usernames). Although such an abbreviation may be expected in a communication limited by the number of characters, this is scant evidence that the Secret Service should expect the same usage in its email, where no such limitation on the number of characters applies.

Plaintiff also includes several other proposed search strings that he contends the Court should now order:

1. ("national archives" OR NARA) AND box! AND (document! OR record!)
2. FBI AND ("Mar-a-Lago" OR MAL)
3. (record! OR document!) AND ("top secret" OR "top-secret" OR "classified")
4. ("Department of Justice" OR DOJ) AND ("Mar-a-Lago" OR MAL) AND (document! OR record!)
5. ("Mar-a-Lago" OR MAL) AND "storage room" AND (document! OR record!)

Pl.'s Opp'n, Dkt. 26 at 17. All five proposals lack merit, and reflect confusion either about the

Secret Service's functions, the timelines of the relevant events, or both.

With respect to the former: Plaintiff contends that the Secret Service's explanation of its role "responds to a straw man." Pl.'s Opp'n, Dkt. 26 at 1. But, in understanding what search would be reasonable for the Secret Service to conduct, it is critical to understand that the Secret Service is not charged with protecting or interacting with a former President's documents. As the recent Indictment states: "The United States Secret Service . . . provided protection services to TRUMP and his family after he left office, including at The Mar-a-Lago Club, but it was not responsible for the protection of TRUMP's boxes or their contents. TRUMP did not inform the Secret Service that he was storing boxes containing classified documents at The Mar-a-Lago Club." *United States v. Trump*, 9:23-cr-80101-AMC (S.D. Fl. June 8, 2023), Dkt. 3 at 5 (Indictment ¶ 12).

Against that backdrop, there is no reason to expect that—in the regular course of the Secret Service's work—it would have any documents containing such strings as (1) ("national archives" OR NARA) AND box! AND (document! OR record!), (3) (record! OR document!) AND ("top secret" OR "top-secret" OR "classified"), or (5) ("Mar-a-Lago" OR MAL) AND "storage room" AND (document! OR record!). Plaintiff's answer appears to be largely that the investigation related to the potential improper removal and storage of classified information in unauthorized spaces may have led to the creation of responsive materials, but Plaintiff fails to recognize that, as discussed below, that investigation occurred almost entirely after the search for responsive records commenced in this case. For the same reason, a search such as strings (2) and (4), seeking records referring to FBI and DOJ, would be unlikely to locate any responsive records since FBI initiated its investigation just one day before the Secret Service commenced its search in this case. *See infra* at 10. Section B below explains why Plaintiff is mistaken in his

conjectures as to what responsive records may exist, and discusses why it would not be reasonable to extend the Secret Service's search any further.

### B. The Secret Service Reasonably Concluded that Any Further Search Would Be Futile.

Plaintiff contends the Court should order additional searches because, according to Plaintiff, three categories of records might exist. But, to begin with, "adequacy—not perfection—is the standard that FOIA sets," *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015); an agency "need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990) (citing *Perry v. Block,* 684 F.2d 121, 128 (D.C. Cir. 1982)). Indeed, the D.C. Circuit has held that a Plaintiff's speculation that records responsive to his request "*must* exist" was "insufficient to raise a material question of fact with respect to the adequacy of the agency's search." *Oglesby*, 920 F.2d at 68 n.13 (emphasis the Court's). But even if it were otherwise, for the reasons explained below, Plaintiff is mistaken in each of his assertions as to why records responsive to his request exist.

Plaintiff speculates that records responsive to his request: (1) may have been generated by the Secret Service in the course of conducting background checks on visitors to Mar-a-Lago; or (2) may have been created by the Secret Service when responding to inquiries by other government agencies. Pl.'s Opp'n, Dkt. 26 at 19. Plaintiff also alleges that (3) "the Secret Service might well have generated or acquired them to protect Mr. Trump when the records left Mar-a-Lago." *Id.* at 5. Plaintiff errs as to all three categories.

**1.** To begin, in proposing the first category—records generated "in performing background checks on, for example, non-government officials with whom Mr. Trump allegedly shared classified information," *id.* at 19—Plaintiff strays from the parameters of his own request.

Every subcategory of his request, reproduced below, is focused on documents related to the Presidential records stored at Mar-a-Lago or the contents of those Presidential records:

1. All records, with the exception or new clippings and press releases, relating or referring to the retrieval of Presidential records from Mar-a-Lago. Please be sure to include any and all photographs of presidential records that were recovered.

2. All emails, letters, memos, text messages, reports sent and received between Secret Service officials and officials representing former President Donald Trump and officials at the National Archives, Justice Department, FBI relating or referring to Presidential records stored at Mar-a-Lago, discussions about the retrieval of those records, the Presidential Records Act and the ongoing search for Presidential records.

3. All records, with the exception of news clippings and press releases, mentioning or referring to descriptions of Trump Presidential records that were not turned over to NARA after former President Donald Trump left office.

4. Any and all letters, memos, reports, Secret Service officials have exchanged with other federal government agencies and congressional committees relating or referring to presidential records stored at Mar-a-Lago.

5. Final reports of investigation and audits and reviews relating or referring to the presence of classified information contained in Presidential records removed from the Trump White House and retrieved from Mar-a-Lago by NARA officials; and final reports of investigation and audits relating or referring to missing Presidential records from the Trump White House.

6. All emails, memos, reports, text messages, letters, criminal referrals, sent and received by Secret Service and FBI, CIA, Defense Intelligence Agency, National Security Agency, State Department, Department of Defense, and the Inspector General of the Intelligence Community, relating or referring to the presence of classified information contained in all presidential records retrieved from Mar-a-Lago.

7. All records, such as letters, memos, reports, exchanged with any Congressional committee relating or referring to the presence of classified information contained in all presidential records retrieved from Mar-a-Lago by NARA officials.

*See* Dkt. 23-4 at 3–4 (Tyrrell Decl. ¶ 4). Even where Plaintiff mentioned "classified information" in the request, he did so in the context of "classified information contained in . . . presidential

records." *Id*. Plaintiff's attempt to rewrite his FOIA request, to effectively substitute "classified information" for "presidential records," should be rejected. *See* Pl.'s Opp'n, Dkt. 26 at 15-16.

To bring the posited documents related to "background checks on . . . non-government officials" within the scope of Plaintiff's request, a background check would have had to have been conducted with specific reference to the Presidential records or their contents. Given that, as Plaintiff acknowledges, the Secret Service's role did not include any interaction with, or responsibility for, the Presidential records, it is difficult to imagine a setting in which such a reference would have arisen, and Plaintiff proposes none.[1] And, in light of that, and since Plaintiff's request did not identify the "the non-government officials with whom Mr. Trump allegedly shared classified information," *id.* at 19, it would have been impossible for the Secret Service to craft a search to target such records; a search that simply returned all records related to background checks for visitors to Mar-a-Lago, would have been vastly overbroad and unmoored from the text of Plaintiff's request.

**2.** Next, Plaintiff proposes that records responsive to his request could have arisen in the course of the Secret Service's communication with other government agencies or congressional committees regarding those other entities' own investigations of or equities in the Presidential

---

[1] Moreover, even if such records were responsive to Plaintiff's request, they would not be "agency records" subject to FOIA. In the very case in which the Secret Service provided the detailed declaration on which Plaintiff relies about "what records it creates or obtains to perform its protective functions," *see* Pl.'s Opp'n, Dkt. 26 at 6, the Second Circuit held that such records created in the course of protecting the President were not "agency records" within the meaning of FOIA. *See Doyle v. DHS*, 959 F.3d 72, 76 (2d Cir. 2020). *See also Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013) (White House visitor logs "regardless of whether they are in the possession of the White House or the Secret Service" were not "agency records" under FOIA); *Behar v. DHS*, 39 F.4th 81, 90 (2d Cir. 2022) (holding that FOIA does not encompass records created in the course of the Secret Service's work in protecting presidential candidate or President-elect), *cert. denied Behar v. DHS*, 2023 WL 3158361 (U.S. May 1, 2023).

records. *See id.* Plaintiff overlooks a critical fact: such communications, if any, would have occurred well after the search for responsive records was initiated in this case, and therefore would be beyond the scope of the records responsive to Plaintiff's request.

The Courts have recognized that a temporal limitation, or "cut-off date," must necessarily apply to an agency's reasonable search for records responsive to a FOIA request, and they have repeatedly recognized that the date on which an agency commences its search is an appropriate limitation. *See Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) (citing *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 642 (D.C. Cir. 2002) ("The D.C. Circuit has all but endorsed the use of date-of-search as the cut-off date for FOIA requests."); *see also, e.g. Fox News Network, LLC v. U.S. Dep't of Treasury*, 739 F. Supp. 2d 515, 536 (S.D.N.Y. 2010) (collecting cases and observing that "courts have consistently held that an agency may limit its FOIA search to records created on or before the date of the commencement of the search"); *cf. Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991) (recognizing that failure to place temporal limitations on an agency's FOIA obligations "could create an endless cycle of judicially mandated reprocessing").

Here, as explained in Defendants' Motion, the Secret Service initiated its search for responsive records on April 1, 2022. *See* Dkt. No. 23-4 at 5 (Tyrrell Decl., ¶ 9). This was just one day after the FBI commenced its investigation, *United States v. Trump*, 9:23-cr-80101-AMC (S.D. Fl. June 8, 2023), Dkt. 3 at 20 (Indictment ¶ 50) ("On March 30, 2022, the FBI opened a criminal investigation."), and nearly a month *before* the grand jury opened its investigation, *see id.* (Indictment ¶ 51) ("On April 26, 2022, a federal grand jury opened an investigation."). Thus, although Plaintiff contends that the Court should order additional searches because "[w]e know the FBI and Special Counsel investigated the storage of classified information at Mar-a-Lago,"

Pl.'s Opp'n, Dkt. 26 at 19, Plaintiff overlooks that those investigations occurred almost entirely *after* the search for responsive records commenced, and therefore documents created in the course of responding to those investigations would not be responsive to his request.

Likewise, although Plaintiff contends that the Court should order additional searches because Plaintiff asserts "it would be logical if not expected" for agencies in the Intelligence Community with equities in the classified Presidential records "to approach the Secret Service given its proximity to the records, and, presumably, its record-keeping about who had access to the premises," *id.*, Plaintiff again overlooks that any such communications, if they occurred, necessarily would have been after the cut-off date for records responsive to his request. Public documents reflect that, well into May 2022—the month after the Secret Service began its search for records responsive to Plaintiff's request—the National Archives and Records Administration ("NARA") was still trying, through the process established under the Presidential Records Act, to arrange for the FBI and others in the Intelligence Community to access the records that had been transferred to NARA from Mar-a-Lago in January 2022. *See* Letter from Debra Steidel Wall, Acting Archivist of the United States, to Evan Corcoran (May 10, 2022), *available at* https://www.archives.gov/files/foia/wall-letter-to-evan-corcoran-re-trump-boxes-05.10.2022.pdf (informing former President Trump's attorney that "we had not yet provided the FBI with access to the records when we received your letter on April 29, and we have continued to refrain from providing such access to date.").

The same is true of Congressional inquiries. Although Plaintiff points to one letter, sent on February 9, 2022, from the Acting Archivist to the Chair of the House Committee on Oversight and Reform to NARA, *see* Pl's Opp'n, Dkt. 26 at 6, that letter is focused entirely on Congressional inquiries about the information in the records that had been transferred to NARA

from Mar-a-Lago in January 2022 and the steps NARA had taken in connection with those records. *See* Letter from David S. Ferriero, Archivist of the United States, to the Hon. Carolyn B. Maloney (Feb. 18, 2022), available at https://www.archives.gov/files/foia/ferriero-response-to-02.09.2022-maloney-letter.02.18.2022.pdf. There is no basis on which to conclude that, before two months had elapsed—before NARA was able to give any other Government entity access to review the documents, *see supra*, and before the FBI had commenced its own investigation—Congress was reaching out to the Secret Service to question it about who had visited the former President's residence at Mar-a-Lago. Indeed, the Congressional hearing to which Plaintiff cites, *see* Pl.'s Opp'n, Dkt. 26 at 6, did not occur until nearly one year later on March 1, 2023, eleven months after the cut-off date for the search in this case.

In sum, although Plaintiff's Opposition discusses the recovery of Presidential records from Mar-a-Lago, the ensuing government investigations, and Plaintiff's FOIA request, largely without reference to their chronological order, *see, e.g.,* Pl.s' Opp'n, Dkt. 26 at 5 ("Throughout, the government was investigating Mr. Trump for improperly storing [Presidential records containing classified material]."), the chronology is critical to understanding the scope of the Secret Service's obligations in this case, and the reasons why any further searches proposed by Plaintiff cannot reasonably be expected to locate any responsive documents.

    **3.**    Finally, Plaintiff contends "the Secret Service might well have generated or acquired [records responsive to Plaintiff's request] to protect Mr. Trump when the [Presidential] records left Mar-a-Lago." *Id.* It is not entirely clear what Plaintiff intends by this statement. If Plaintiff intends to refer to records concerning visitors to Mar-a-Lago, the reasons why such records would not be responsive to Plaintiff's request, or indeed, subject to FOIA at all, are addressed above. *See supra* at 7–9. If Plaintiff intends to refer to materials related to the

Government's removal of Presidential records from Mar-a-Lago, then only the January 2022 provision of records to NARA would be within the temporal scope of Plaintiff's request since the grand jury subpoena and FBI search warrant both occurred after the search in this case was initiated, *see supra* at 10.

As to the January 2022 provision of the records to NARA: the Indictment confirms that the Secret Service would have had no involvement in that event. According to the Indictment, "On January 17, 2022, Trump Employee 2 and NAUTA gathered 15 boxes from TRUMP's residence, loaded the boxes in NAUTA's car, and took them to a commercial truck for delivery to NARA." *United States v. Trump*, 9:23-cr-80101-AMC (S.D. Fl. June 8, 2023), Dkt. 3 at 20 (Indictment ¶ 46). In sum, here too, there is no basis on which to conclude that any records responsive to Plaintiff's request might have been created by or provided to the Secret Service.

## II.    CONCLUSION

For all the reasons explained herein and in Defendants' Motion, the Court should grant Defendants' Motion, deny Plaintiff's Cross-Motion, and enter judgment for Defendants.

Dated: July 17, 2023                            Respectfully submitted,

                                                               BRIAN M. BOYNTON
                                                               Principal Deputy Assistant Attorney General

                                                               MARCIA BERMAN
                                                               Assistant Branch Director

                                                               /s/ *Julia A. Heiman*
                                                               JULIA A. HEIMAN (D.C. Bar No. 986228)
                                                               Senior Counsel
                                                               United States Department of Justice
                                                               Civil Division, Federal Programs Branch
                                                               1100 L Street, NW
                                                               Washington, DC  20005

Tel: 202-616-8480
julia.heiman@usdoj.gov

*Attorneys for Defendants*

- 13 -