UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON LEOPOLD,**<br><br>**Plaintiff,**<br><br>v.<br><br>**U.S. SECRET SERVICE,**<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY,**<br><br>**Defendants.** | No. 22-cv-1923-RDM-ZMF |

## REPORT AND RECOMMENDATION

Plaintiff Jason Leopold ("Leopold") brought a Freedom of Information Act ("FOIA") suit to compel Defendants United States Secret Service ("Secret Service" or "Defendants") and United States Department of Homeland Security ("Homeland Security" or "Defendants") to produce documents concerning any Presidential records that were removed from the White House to Mar-a-Lago. *See* Compl. ¶ 1. Leopold filed an application for an award of attorneys' fees and costs pursuant to FOIA, 5 U.S.C. § 552(a)(4)(E). Leopold seeks an award of $55,147.70 in attorneys' fees and $24,627.30 in fees on fees, for a total of $79,775. Defendants maintain plaintiff is neither eligible for, nor entitled to, a fee award under FOIA, and that the amount plaintiff seeks is unreasonable.

The Court finds that Leopold is eligible for and entitled to a fee award under FOIA. However, given the narrow relief Leopold obtained in this case, the Court finds that 20% of the amount claimed would be a reasonable award. For the reasons set forth herein, the Court GRANTS

1

Leopold's application and awards him $11,029.54 in attorneys' fees and $4,925.46 in fees on fees for a total award of $15,955.

## I. FACTUAL BACKGROUND

This case concerns plaintiff Jason Leopold, a Senior Investigative Reporter at Buzzfeed News. *See* Compl. Ex. 1, Request for Records under the Freedom of Information Act ("FOIA Request") 3, ECF No. 1. Defendant United States Secret Service is a federal law enforcement agency charged with the physical protection of the president and others under the Secret Service. *See* Tr. 28: 15-18, ECF No. 34. The Secret Service also investigates financial crimes. *See id.* at 10-14. Defendant United States Department of Homeland Security is the parent agency of Secret Service and protects the country against potential threats. *See* Compl. ¶ 17. Both agencies are subject to FOIA. *See id.*

On March 11, 2022, Leopold submitted a FOIA request to the Secret Service to produce records pertaining to seven categories of Presidential records that were removed from the White House to Mar-a-Lago. *See* Compl. ¶ 8. On March 14, 2022, the Secret Service stated that it was conducting a search for records responsive to Categories 2, 4, and 6 of the request. *See id.* ¶ 9–10. On April 6, 2022, the Secret Service informed Leopold of potentially responsive emails pertaining to those three categories. *Id.* ¶ 11. On June 13, 2022, Leopold requested an estimated date of search completion. *Id.* ¶ 12. On the same day, the Secret Service responded that although it located potentially responsive records, it was unable to provide an estimated date of completion and that the request was still processing. *See id.* Ex. 5, Status Update Letter, 10–11.

On July 1, 2022, Leopold initiated the FOIA lawsuit. *See generally id.* On August 8, 2022, the Secret Service informed Leopold that it completed review of the request and located no responsive records. *See* Def. Mot. for Summ. J. 6, ECF No. 21. The parties conferred over the

scope of the search and identified three areas of disagreement: (1) the adequacy of the Secret Service's search terms, (2) the Secret Service's refusal to search for all elements in the FOIA request, and (3) the Secret Service's decision not to conduct a text message search. *See* Pl. Mot. for Atty. Fees at 1. On February 1, 2023, during a pre-summary judgment conference, the Court suggested a text message search would be appropriate. *See id.* at 2. An additional text message search located no responsive records. *See id.* at 3. After failing to reach consensus on the remaining issues, the parties cross-moved for summary judgment. *See* Joint Status Report (April 5, 2023), ECF No. 19.

On March 11, 2024, Judge Moss held oral argument on the parties' cross motions and found the search terms "unduly narrow," and indicated that the Secret Service should have searched all categories listed in the request. *See* Tr. 33:23-25, 34:1-2, 32:6-16. Judge Moss acknowledged that the records sought were "highly unlikely" to exist. *See id.* at 29:20-23. Ultimately, Judge Moss denied both motions, leaving the Secret Service the option of either renewing summary judgment based on a "further declaration offering additional detail with respect to futility," or conducting a new email search. *Id.* at 35:7-9. The Secret Service proceeded with the second option and the parties agreed on parameters for a further email search. This search yielded no responsive records. *See* Joint Status Report (July 1, 2024), ECF No. 37.

On November 5, 2024, Judge Moss referred the pending fee petition to the undersigned for preparation of a Report and Recommendation. *See* Min. Order (Nov. 5, 2024).

II.     **LEGAL STANDARD**

FOIA provides attorneys' fees and costs "reasonably incurred in any case . . . in which the complaint has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To recover fees and costs, a FOIA requester must show both eligibility for and entitlement to an award. *See Brayton v. Off. of*

3

*the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368-69 (D.C. Cir. 2006)). The "eligibility prong asks whether the plaintiff has substantially prevailed." *Brayton*, 641 F.3d at 524–25. If a court determines that a plaintiff is eligible, "the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* at 524. Once these prongs are established, the plaintiff must then show its fee calculation is reasonable. *See Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107-08 (D.C. Cir. 1995). District courts have "broad discretion in deciding whether attorney[s'] fees should be awarded on the particular facts of each case." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 710 (D.C. Cir. 1977).

**III.   DISCUSSION**

  A.   <u>Leopold Is Eligible for a Fee Award.</u>

There are two ways a plaintiff can demonstrate that they have "substantially prevailed" to receive fees under FOIA: "(I) a judicial order; or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The latter avenue is commonly referred to as the "catalyst theory." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020).

Defendants argue that a plaintiff relying on catalyst theory "must receive records responsive to its request in order . . . to have 'substantially prevailed.'" *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d at 42, 47 (D.D.C. 2012). Not so. *See, e.g.*, *Protect the Pub. Tr. v. Internal Revenue Serv.*, No. 23-cv-340-RCL, 2024 WL 663427, at *14 (D.D.C. Feb. 16, 2024); *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 130 F. Supp. 3d 156, 165 (D.D.C. 2015); *Elec. Priv. Info. Cent. v. Internal Revenue Serv.*, No. 1:18-cv-902 (TJK/GMH), 2023 WL 4892712, at *15 (D.D.C. June 2, 2023) (finding plaintiff eligible for attorneys' fees under

4

catalyst theory even though the agency located no responsive records). "FOIA defines 'relief' broadly as, among other things, the 'taking of . . . action on the application [] or petition of, and beneficial to, a person.'" *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202 (D.D.C. 2016) (citing 5 U.S.C. § 551(11)). In fact, the attorneys' fees provision of FOIA "does not mention 'records' at all." *Protect the Pub. Tr.*, 2024 WL 663427 at *5 (citing 5 U.S.C. § 552(a)(4)(E)). And "if Congress wanted to cabin [attorneys' fees] to cases where the plaintiff obtained responsive records, it could have easily done so." *Id.* at *5. Categorically refusing to award fees in a case where a plaintiff caused an agency to conduct a search that it had refused to perform but did not ultimately result in responsive records would deter legitimate FOIA plaintiffs from bringing suit. *See id.* at *7. That would violate the statutory purpose. And when "determining fee awards, courts must keep in mind the purpose behind . . . FOIA: to 'encourage the maximum feasible public access to government information' and to 'facilitate citizen access to the courts to vindicate their statutory rights.'" *Leopold v. U.S. Dep't of Just.*, No.21-cv-942, 2023 WL 1875229, at *3 (D.D.C. Jan. 26, 2023) (citations omitted).

Here, the Secret Service refused to undertake the requested search terms twice. *See* Compl. ¶¶ 10, 24; *see also* Pl. Mot. for Atty. Fees at 1. The instant litigation catalyzed a change in position by the Secret Service. Judge Moss gave the Secret Service the option to either conduct an additional search or strengthen their futility claim. *See* Tr. 35:6-13. The Secret Service chose to conduct an additional search. *See* Joint Status Report (July 1, 2024). Therefore, Leopold's lawsuit caused the Secret Service to change its position and voluntarily search for records. *See id.* This change was relief under FOIA because it was "everything [Leopold] *could have* obtained at the time they filed suit." *Protect the Pub. Tr.*, 2024 WL 663427 at *9. "[Leopold] did not know whether responsive records existed; only [the Secret Service] search revealed that they did not. So

5

[Leopold] received the maximum extent of relief in fact available to [him] through suit—a satisfactory search revealing no records. This constitutes 'relief' under § 552(a)(4)(E) . . . [a]nd it constitutes 'relief' within the meaning *Mobley*, because [Leopold's] search request was 'antecedent or incident to any dispute about the production or non-production of records themselves.'" *Id.* at *5, 9. Accordingly, Leopold is eligible for attorneys' fees.

Defendants' reliance on *Mobley* is misplaced. *See* Def. Opp. to Pl. Mot. for Atty. Fees at 4-10, ECF No. 40. First, in *Mobley*, the plaintiffs "voluntarily dismissed their case several months before filing for attorneys' fees because they determined the relief they really wanted—the release of records that the defendant believed were properly exempt from disclosure—was not worth the cost of continuing to litigate." *Protect the Pub. Tr.*, 2024 WL 663427 at *9. On the contrary, Leopold received all the relief he could have gotten by changing the Secret Service's position and learning that there were no responsive records. *See* Joint Status Report (July 1, 2024). Second, the *Mobley* court found that plaintiffs did not substantially prevail because there was no "voluntary or unilateral change in position by the agency"—specifically, the government complied with the search request within three weeks of the plaintiff filing suit. *Mobley*, 908 F. Supp. 2d at 48. Here, the Secret Service disagreed through the filing of cross-summary judgment motions and the related hearing. The Secret Service did not change its search parameters until Judge Moss presented two options: (1) further declare their futility argument or (2) conduct an additional search. *See* Tr. 35:7-14. Therefore, Leopold has prevailed under catalyst theory, and he is eligible for attorneys' fees. *See People for the Ethical Treatment of Animals*, 130 F. Supp. 3d at 167 (awarding $22,724.03 in attorneys' fees even though no records were found).

B.  Leopold Is Entitled to a Fee Award.

6

Next, the Court turns to whether plaintiff is also "entitled" to an award. *See Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1159 (D.C. Cir. 2011). In determining entitlement, courts consider four factors: "(1) the public benefit derived from the case, (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Id.* No factor is dispositive. *Morley v. Cent. Intel. Agency,* 894 F.3d 389, 391 (D.C. Cir. 2018). Ultimately, the Court has broad discretion in deciding which factors control. *Id.*

1. *Public Benefit Derived from the Case*

The public benefit factor turns on "consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159. This assessment is *ex ante*. In other words, "if [it is] plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Morley v. Cent. Intel. Agency (Morley IX)*, 810 F.3d 841, 844 (C.A.D.C. 2016).

Leopold's request served an *ex ante* benefit. There was at least a "modest probability" in unearthing relevant information on the classified Presidential records stored at Mar-a-Lago. *See Elec. Priv. Info. Ctr. v. U.S. Drug Enf't Admin.*, 266 F. Supp. 3d 162, 169 (D.D.C. 2017) (holding that "modest probability" exists when the requester has a "colorable basis" for believing that the lawsuit will unearth useful information). The information Leopold sought concerns a matter of public interest. Indeed, Judge Moss noted that unearthing these documents could get "some extremely newsworthy information." Tr. 10:23. Given the Secret Service's role, it was possible that they would have encountered the boxes in which President Trump stored the classified documents. *See id.* at 10:24-25, 11:1. Even within the agency's limited role, Judge Moss noted that "it would [not] be terribly hard to imagine a letter from a congressional committee to the Office of

Legislative Affairs . . . saying [they] would like to know whether the Secret Service knows anything about this." Tr. 12:18-21. Thus, it was plausible that the Secret Service could have generated records if the congressional committee asked the Secret Service about their Mar-A-Lago observations. *See id.* at 12:22-25, 13:1-10.

Defendants argue that there was a limited benefit since the request would "contribute[] only scant information to the public record." Def. Opp. to Pl. Mot. for Atty. Fees at 11 (quoting *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014)). First, Defendants note that by the time the parties' litigated the adequacy of Defendant's search, President Trump's indictment was unsealed. *Id.* at 14. Defendants argue that the indictment demonstrated that Defendants did not possess any documents related to the transfer of Presidential records. *Id.* This information was publicly available and cited during the summary judgment stage, which would be considered in Leopold's *ex ante* assessment. *Id.* However, Leopold's request for the Secret Service's "emails, memos, reports, text messages, letters, criminal referrals" related to the Presidential records retrieved from Mar-a-Lago was not encompassed the by the indictment. *See* Compl. Ex. 1, FOIA Request at 1. Indeed, Judge Moss noted that the public knowing whether "the Secret Service was aware of [the records] and . . . hiding something" aligns with one of the purposes of FOIA: "allow[ing] members of the public to test whether those positions are true or not." Tr. 10:24-25, 11:1-2.

Second, Defendants argue that the lack of records reflects, at best, a scant addition to the public record. *See* Def. Opp. to Pl. Mot. for Atty. Fees at 11. However, while "an absence of records certainly lessens any public benefit, it does not eliminate the potential for public good altogether" as the question "is whether the public benefited 'from the case,' not just from the disclosures that resulted from the case." *Gov't Accountability Project v. U.S. Dep't of Homeland*

*Sec.*, No. 17-cv-2518, 2020 WL 4931932, at *1 (D.D.C. June 2, 2020) (quoting *Davy*, 550 F.3d at 1159). Given the value of the information sought and the Secret Service's unique involvement, the mere existence of the case benefited the public. So, even though there were no records, "the Court cannot say this case resulted in absolutely no public benefit." *Gov't Accountability Project*, 2020 WL 4931932 at *1.

This factor weighs in favor of a fee award.

### 2. *Commercial Benefit and Nature of Interest*

The commercial benefit and nature of interest factors are closely related and often considered together to help the court distinguish between requesters seeking documents for public informational purposes versus private gain. *Davy*, 550 F.3d at 1160.

Defendants do not dispute that the second and third factors favor Leopold. *See* Def. Opp. to Pl. Mot. for Atty. Fees at 14. As an investigative journalist, Leopold's "activities often aim to ferret out and make public worthwhile, previously unknown government information – precisely the activity that FOIA's fees provision seeks to promote." *Davy*, 550 F.3d at 1160.

These two factors weigh in favor of a fee award.

### 3. *Reasonableness of Withholding Records*

The fourth factor considers whether the agency had a reasonable basis in law and "'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (quoting *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 486 (D.C. Cir. 2008)). "'If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.'" *Id.* (quoting *Chesapeake Bay Foundation v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (C.A.D.C. 1993).

There was a reasonable basis for Defendants' refusal to search. Leopold contends that the Secret Service acted unreasonably because they acted beyond the statutory timeline. *See* Pl. Mot. for Atty. Fees at 14. Additionally, the Secret Service conducted an additional search *after* the Court's summary judgement decision. *See* Def. Opp. to Pl. Mot. for Atty. Fees at 15. First, "an agency's failure to respond to a FOIA response within the statutory timeline is not automatically unreasonable." *Poitras v. Dep't of Homeland Sec.*, 2019 WL 1569561, at *9 (D.D.C. 2019). Second, it was not unreasonable for the Secret Service to refuse an additional search. The Secret Service held a limited role related to the request: the physical protection of the president. The Secret Service reasonably assessed that they would have no information relating to Leopold's request stemming from their protection services. *See* Def. Resp. at 11-12, 15. In fact, this was confirmed to be correct. *See* Joint Status Report (July 1, 2024), ECF No. 37. And Judge Moss independently came to the same conclusion. *See* Tr. 29:16-24. He noted that the Secret Service served a limited role and suggested that responsive records were "highly unlikely" to exist[1]. *Id.* The Secret Service "[did] not stonewall[], delay[], or repeatedly find[] responsive documents," since no records exist. *Poitras*, 2019 WL 1569561 at *10. Therefore, the Secret Service acted reasonably in withholding records.

This factor weighs against a fee award.

4. *Balancing the Factors*

Despite factor four weighing in the Defendants' favor, "it is insufficiently decisive to counterbalance Factors 1-3." *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 369 (D.D.C. 2025). Defendants contest factors 1 and 4, but "[do] not dispute that Factors 2 and 3

---

[1] Still, it is undisputed that President Trump brought Presidential records to Mar-a-Lago, his personal estate. Thus, it was possible that the Secret Service encountered the records. *See* Tr. 10:1-5.

weigh in favor of entitlement." *Id.* at 364. The intent of FOIA is to prevent "'obstinate government agenc[ies from] substantially deter[ring] many legitimate and meritorious FOIA requests.'" *Protect the Pub. Tr.*, 2024 WL 663427 at *7 (quoting S. Rep. No. 110-59, at 4 n.3). Leopold's FOIA request concerned sensitive questions regarding a federal agency's potential culpability in withholding records, and its importance is "not limited to [whether his request yielded] responsive records." *Id.*; *see* Compl. ¶ 8. Therefore, denying Leopold's request for attorneys' fees would "force [him] to bear the costs of litigation," which "would do violence to the scheme of incentives embodied in the [FOIA] statute's text." *Protect the Pub. Tr.*, 2024 WL 663427 at *7.

In *Morley*, the D.C. Circuit upheld a denial of fees where the first three factors supported the movant, but the fourth factor supported the government. *Morley*, 894 F.3d at 396. However, in that case, "factors one through three favored [Plaintiff] . . . only slightly." *Id.* And the fourth factor "heavily favored" Defendant because, among other things, (1) "the exact same records were publicly available at the [National] Archives" and reasonably suggested that the CIA was not required to disclose them themselves, (2) the records included "foreign intelligence or counterintelligence activities" that typically are "exempt from FOIA requests," (3) the CIA reasonably thought that mere confirmation or denial of files' existence posed national security risks, and (4) the CIA correctly withdrew some of its exemptions following a change in controlling law. *Id.* at 393–96. This is very different than the present case. Here, the first three factors strongly favor Leopold. And none of the Secret Service's actions rely on bases analogous to, or as reasonable as, those listed for *Morley*. Thus, *Morley* does not control.

Instead, this Court follows *ForestWatch*. There, Judge Moss ruled that the same "three factors that tip in favor of ForestWatch all support the conclusion that this is the type of case in which an incentive to litigate is both necessary and in the public interest. And, although Factor 4

tips in the other direction, the Court concludes that it is insufficiently decisive to counterbalance Factors 1-3." *Los Padres ForestWatch*, 775 F. Supp. 3d at 369. So, even though "the fourth factor did not weigh in [Leopold's] favor, the Court [will] still find that the other three factors are sufficient to entitle [Leopold] to fees." *Mattachine Soc'y of Wash. v. U.S. Dep't of Just.*, 406 F. Supp. 3d 64, 70 (D.D.C. 2019).

      C.      <u>A Reasonable Fee Award is $15,955.</u>

The Court must next determine whether the requested award is reasonable. *See* 5 U.S.C. § 552(a)(4)(E)(i). "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. §1988." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). "If the plaintiff achieves only limited success, it is within the court's discretion to reduce the award of fees." *Hall v. Cent. Intel. Agency*, 115 F. Supp. 3d 24, 27 (D.D.C., 2015). "[W]hen a fee application must be whittled down based on litigant's level of success, the Supreme Court has approved a procedure by which the court merely reduces the lodestar amount by a certain percentage, rather than engaging in a line-by-line-analysis of the charged fees." *Elec. Priv. Info. Cent.*, 2023 WL 4892712 at *15. Courts readjust the lodestar amount "to reflect 'the significance of the overall relief obtained by the plaintiff.'" *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 408 (D.D.C. 2015) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 774 F. Supp. 2d 225, 233 (D.D.C. 2011)).

Leopold calculated his fee application using the Department of Justice's Fitzpatrick Matrix. *See* Pl. Mot. for Atty. Fees at 16. Defendants do not object to the use of the Fitzpatrick Matrix. *See* Def. Opp. to Pl. Mot. for Atty. Fees at 11. The lack of contention indicates that "the [Defendants] concede that the Fitzpatrick Matrix yields a reasonable hourly rate." *See id.*; *WP Co. v. U.S. Dept. of Homeland Sec.*, No. 1:20-cv-1487 (TNM), 2023 WL 1778196, at *4 (D.D.C. Feb. 6, 2023).

Case 1:22-cv-01923-RDM-ZMF    Document 42    Filed 08/01/25    Page 13 of 15

However, Defendants contest the reasonableness of the hours billed due to Leopold's "time spent in duplicative, unorganized, or otherwise unproductive effort" to yield records that the Secret Service reasonably believed to be futile. *Env't. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993); *see* Def. Opp. to Pl. Mot. for Atty. Fees at 17.

Leopold's request[2] is unreasonable considering he "prevailed only on a narrow portion of the relief [he] requested." *People for the Ethical Treatment of Animals*, 130 F. Supp. 3d at 167. His complaint raised five forms of relief, of which Judge Moss granted two. *See* Tr. 35:7-9; *see also* Def. Resp. at 7. This is minimal success. *See People for the Ethical Treatment of Animals*, 130 F. Supp. 3d at 162, 167 (finding minimal success where plaintiff received partial relief). Leopold "prevailed only to the extent the request could be broadly read to seek other documents [a]nd even with respect to that category of documents, it turned out there were no responsive documents." *Id*. at 167. "Given the narrow slice of relief that [he] obtained, the Court finds that a reasonable fee award is [20%] of [Leopold's] claimed amount." *Id.* (awarding only 10% of requested amount due to limited success).

Further, Leopold's request for 88.7 hours spent on summary judgment litigation that he lost is unreasonable. *See Firestine v. Parkview Health Sys., Inc.*, 374 F. Supp. 2d 658, 664 (N.D. Ind. 2005) (finding it unreasonable for attorneys to spend 78 hours on responding to summary judgment and reducing award by 20%). Moreover, FOIA cases are "procedurally straightforward" and "easy to discern [since] once filed, the case typically proceeds to summary judgment." *Elec.*

---

[2] Leopold seeks $55,147.70 in attorneys' fees and $24,627.30 in fees on fees, for a total of $79,775. Pl. Reply at 1, ECF No. 41. The $79,775 fee breakdown includes $49,311 for 88.7 hours spent on the merits phase of the case, $5,286.70 for 8.4 hours on settlement discussions, $11,541.20 for 19.8 hours on the fee petition, $13,086.10 for 22.8 hours on the reply, and $550 in court costs. *See id.* at Ex. 1; Times Entries at 1; Pl. Mot. for Atty. Fees at 16, 18.

13

*Priv. Info. Ctr. v. Dep't of Sec.*, 197 F. Supp. 3d 290, 295-96 (D.D.C. 2016). So, Leopold's counsel should not have spent so much time on one round of summary judgment litigation. *See id.* Indeed, "[i]n a run-of-the-mill case, the court agrees that 25 hours would probably be sufficient to prepare a resistance to a summary judgment motion." *Baker v. John Morell & Co.*, 263 F. Supp. 2d 1161, 1197 (N.D. Iowa 2003).

For these reasons, an 80% reduction in attorneys' fees is appropriate. *See People for the Ethical Treatment of Animals*, 130 F. Supp. 3d at 167 (decreasing fee award by 90% because the plaintiff had limited success and the search yielded no responsive records); *Piper v. Dep't of Justice*, 339 F. Supp. 2d 13, 24-25 (D.D.C. 2004) (decreasing a fee award by 50% because the plaintiff partially prevailed). Courts similarly "reduce the fees-on-fees award commensurate with reductions to merits fees." *Elec. Priv. Info. Ctr.*, 197 F. Supp. 3d at 297. Thus, an 80% reduction in fees-on-fees is also appropriate. *See id.*

## IV.   RECOMMENDATION[3]

Accordingly, the undersign recommends an award of fees in the following amounts for lodestar fees:

(1) $9,862.20 for merits phase of the case including complaint and motion for summary judgment;

(2) $1,057.34 for settlement discussions;

---

[3] Per Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

(3) $110 in court costs;

As for fees on fees, the undersign recommends the following:

(4) $2,308.24 for work related to the fee petition;

(5) $2,617.22 for work on the reply

This leads to a total award of $15,955.

Date: August 1, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE