**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JASON LEOPOLD,<br>*Plaintiff*,<br>v.<br>U.S. SECRET SERVICE, *et al.*,<br>*Defendants.* | Civil Action No. 22-cv-1923 (RDM) |

# MEMORANDUM OPINION AND ORDER

In this Freedom of Information Act ("FOIA") action brought against the United States Department of Homeland Security and the United States Secret Service, Plaintiff Jason Leopold has moved for attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E). *See* Dkt. 39. Plaintiff contends that he is both eligible for and entitled to fees and asks this Court to award him $94,949.20. The Court referred Plaintiff's motion to Magistrate Judge Faruqui for a Report and Recommendation ("R&R") pursuant to Rule 72(b) of the Federal Rules of Civil Procedure. Min. Order (Nov. 5, 2024). Judge Faruqui recommended granting the motion but proposed an 80% reduction in Plaintiff's fees. Dkt. 42 at 1, 14. For the reasons explained below, the Court will adopt in part and modify in part Judge Faruqui's R&R and will **GRANT** Plaintiff's motion and will **AWARD** him fees in the amount of $67,995.40.

## I. BACKGROUND

Plaintiff Jason Leopold is an investigative reporter. Dkt. 25-2 at 1 (Leopold Decl. ¶ 3). In 2022, he was reporting on "government investigations into former President Donald Trump's storage of presidential records, and records containing classified information, at his private residence at Mar-a-Lago after he left the presidency." *Id.* As part of his investigation, Plaintiff

submitted a seven-part FOIA request to Defendants on March 11, 2022. Dkt. 1 at 2 (Compl. ¶ 8). On March 14, 2022, the Secret Service responded that it was conducting a search for records responsive to the even-numbered parts of the request and directed Plaintiff to submit the odd-numbered parts of his request to the National Archives and Record Administration. Dkt. 1-1 at 5–6. After Plaintiff inquired about the status of his request, the Secret Service notified Plaintiff that potentially responsive records had been located and were in processing. Dkt. 1 at 3 (Compl. ¶¶ 12–13). It also stated that it was "unable to provide an estimated date of completion" for the request. *Id.* Leopold then initiated this FOIA lawsuit on July 1, 2022. *See* Dkt. 1.

On August 8, 2022, the Secret Service advised Plaintiff that its search had not located any responsive records. Dkt. 22-3 at 6 (Tyrrell Decl. ¶ 13). It asked Plaintiff whether he "could offer any additional search terms to locate potentially responsive records," but Plaintiff declined to do so until he filed his pre-summary judgment notice several months later. *Id.* (Tyrrell Decl. ¶ 15); *see* Dkt. 15 at 4. After conferring about the scope of the search, the parties concluded that there remained three areas of disagreement: "(1) the adequacy of the agency's search terms, (2) the agency's refusal to search for four of the request's seven items," and "(3) the agency's decision not to search for text messages." Dkt. 39 at 5–6; *see also* Dkt. 13 at 3. At the pre-motion conference, the Court indicated that a text message search could be warranted, *see* Sept. 25, 2025, Hrg. Tr. (Rough at 2); Dkt. 34 at 15, and, after conducting such a search, Defendants indicated that it failed to locate any responsive records, Dkt. 21-1 at 9–10; Dkt. 22-3 at 7 (Tyrrell Decl. ¶ 16). The parties were unable to reach an agreement, and they accordingly cross-moved for summary judgment. Dkt. 21-1 at 10; Dkts. 21, 25.

The Court held a hearing on the cross-motions on March 11, 2024, and denied both motions. Dkt. 34 at 35. The Court concluded that Defendants had not sufficiently established

that an additional search for responsive records would be futile. *Id.* at 29. Defendants also failed to demonstrate that the request was directed at the National Archives instead of the Secret Service. *Id.* at 32. On the "core" question of the adequacy of the Secret Service's search terms, *id.* at 27, the Court concluded that those terms were "unduly narrow," *id.* at 34. Defendants were given two options—they could either return with a "further declaration offering additional detail with respect to futility" or conduct a new email search. *Id.* at 35. Defendants proceeded with the second option and the parties agreed on parameters for a further email search. *See* Dkt. 36. This search yielded no responsive records. *See* Dkt. 37.

Now before the Court is Plaintiff's motion for attorneys' fees. Dkt. 39. The Court referred the motion to a magistrate judge for an R&R, *see* Min. Order (Nov. 5, 2024), and the matter was randomly assigned to Magistrate Judge Zia M. Faruqui. Judge Faruqui issued an R&R on August 1, 2025, recommending that the Court award Plaintiff fees amounting to $15,955. Dkt. 42 at 15. The R&R advised the parties that, under Local Rule 72.3(b), they could file objections to the R&R within 14 days, and "that failure to file timely objections to the findings and recommendations set forth in th[e] report may waive [the party's] right of appeal from an order of the District Court that adopts such findings and recommendations." *Id.* at 14 n.3. After receiving multiple extensions of the deadline to file objections, Min. Order (Dec. 15, 2025), Plaintiff timely filed his objections to the R&R. *See* Dkt. 48. His objections are now fully briefed, *see* Dkts. 49, 50, and ripe for resolution.

## II. LEGAL STANDARD

Pursuant to 5 U.S.C. § 552(a)(4)(E)(i), the Court "may assess . . . reasonable attorney['s] fees and other litigation costs reasonably incurred" by a FOIA plaintiff who "has substantially prevailed." The test for an award of fees "has two components: eligibility and entitlement."

*Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* "To obtain attorneys' fees under FOIA, a plaintiff must satisfy" both prongs of the test. *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). Moreover, if the plaintiff establishes that it is both eligible for and entitled to fees, it must then demonstrate that the award sought is "reasonable." 5 U.S.C. § 522(a)(4)(E)(i); *see also Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 293 (D.D.C. 2016).

When a party objects to a magistrate judge's recommendations, the Court reviews *de novo* the portion of the report to which the party has objected. Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c); *Smith v. District of Columbia,* 846 F.Supp.2d 197, 198–99 (D.D.C. 2012); *D.D. ex rel. Davis v. District of Columbia,* 470 F.Supp.2d 1, 1–3 (D.D.C. 2007). The Court may "accept, reject, or modify" the magistrate judge's recommendations. Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c).

## III. ANALYSIS

### A. Eligibility

Judge Faruqui concluded that Plaintiff is eligible for a fee award because he substantially prevailed in the action under the catalyst theory. Dkt. 42 at 4–6. The litigation, Judge Faruqui found, caused the Secret Service to alter its position and voluntarily to search for records on two occasions. *Id.* at 5. First, this Court noted that it would be appropriate for the Secret Service to conduct a search for text messages at the pre-motion conference—and the Secret Service did so. *Id.* at 3. Second, after denying the parties' cross-motions for summary judgment, the Court gave

the Secret Service the option of either preparing another declaration on futility or conducting an additional search. *Id.* Defendants chose the latter option. *Id.* Because the lawsuit spurred additional searches by the Secret Service, Judge Faruqui concluded, Plaintiff is eligible for attorneys' fees. *Id*. at 6.

Although Defendants initially argued that Plaintiff is not eligible for attorneys' fees, Dkt. 40 at 7–14, they do not object to Judge Faruqui's conclusion that Plaintiff is eligible for attorneys' fees, Dkt. 49 at 12. The Court will therefore adopt the R&R's recommendation on this issue and find that Plaintiff is eligible for attorneys' fees.

**B. Entitlement**

Judge Faruqui also carefully reviewed Plaintiff's entitlement to attorneys' fees. *Id.* at 6–12. Examining the four factors for determining entitlement, *see Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1159 (D.C. Cir. 2008), he concluded that the public benefit derived from the case, the commercial benefit to the plaintiff, and the nature of the plaintiff's interest factors weighed in favor of granting a fee award, but the reasonableness of the agency's withholding of the requested documents weighed in favor of denying an award of fees, Dkt. 42 at 7–12. Judge Faruqui then balanced those factors and concluded that the fourth factor was "insufficiently decisive to counterbalance Factors 1-3." *Id.* at 11 (quoting *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 269 (D.D.C. 2025)).

Although Defendants initially argued that Plaintiff is not entitled to attorneys' fees, Dkt. 40 at 14–20, they do not object to Judge Faruqui's conclusion that Plaintiff is entitled to attorneys' fees, Dkt. 49 at 12. The Court will therefore adopt the R&R's recommendation on this issue and find that Plaintiff is entitled to attorneys' fees.

## C. Reasonableness of Requested Award

With Plaintiff's eligibility and entitlement to fees established, the Court turns to the calculation of an appropriate fee award. "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The party seeking fees "bears the burden of demonstrating the reasonableness of both the number of hours and the hourly rate," and "[t]he Court has considerable discretion" in adjusting the lodestar amount upwards or downwards as necessary to achieve a reasonable fee figure. *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 47 (D.D.C. 2016).

Both parties and Judge Faruqui agree that the Department of Justice's Fitzpatrick Matrix yields a reasonable hourly rate, *see* Dkt. 42 at 12–13, so the only question is whether Plaintiff's number of claimed hours is reasonable. In briefing before Judge Faruqui, Leopold requested a total award of $79,775, including $55,147.70 in attorneys' fees and $24,627.30 in fees on fees. Dkt. 42 at 13 n.2. Specifically, Leopold requested $49,311 for 88.7 hours spent on the merits phase of the litigation, $5,286.70 for 8.4 hours on settlement discussions, $11,541.20 for 19.8 hours on the fee petition, $13,086.10 for 22.8 hours on the reply, and $550 in court costs. Leopold now additionally requests $10,833.20 for 18.1 hours spent on objections to the R&R, $6,723 for 9.8 hours spent on the reply in support of those objections. Dkt. 50 at 21; Dkt. 48-1 at 4 (Proposed Billing Spreadsheet III); Dkt. 50-1 at 4 (Proposed Billing Spreadsheet IV). He has also now agreed to write off $774.20 for time spent reviewing a draft of a summary judgment

brief, and $1,607.80 for time spent reviewing fee petition materials. *Id.* at 14. This brings Leopold's total requested award to $94,949.20.[1]

Judge Faruqui concluded that Plaintiff's claimed hours were unreasonable because Plaintiff prevailed on only a narrow portion of his FOIA request. Dkt. 42 at 13. Judge Faruqui further concluded that "88.7 hours spent on summary judgment litigation that [Plaintiff] lost is unreasonable," especially for a procedurally straightforward, run-of-the-mill FOIA dispute. *Id.* Judge Faruqui, accordingly, reduced the fee award by 80%, and commensurate with that reduction, reduced Plaintiff's fees-on-fees request by 80%. *Id.* at 14. Those reductions would have resulted in a total award of $15,955. *Id.* at 15.

Plaintiff objects to Judge Faruqui's proposed reduction of his requested attorneys' fees award on two grounds. First, Plaintiff argues that Judge Faruqui wrongly concluded that he "achieved limited success, even though the Court found in his favor on all disputed issues and he received all he could have from the case: searches showing that the Secret Service possessed no records about President Trump's storing [of] classified documents in Mar-a-Lago." Dkt. 48 at 1. Second, Plaintiff argues that he spent a reasonable amount of time on this litigation. *Id.* at 1–2. Defendants urge the Court to adopt Judge Faruqui's proposed 80% reduction, or, alternatively, to reduce Plaintiff's fee request by 68% to account for his limited success on the merits, overstaffing, billing deficiencies, and excessive fees-on-fees request. Dkt. 49 at 1, 26.

---

[1] Leopold states in his most recent reply that he requests a total of $94,976.20, Dkt. 50 at 21, but that appears to follow from a mathematical error. He writes that his total request "includes the $79,775 he sought in his fee petition, the $10,833.20 he incurred on his Objections to the R&R, and the $6,723 claimed for this reply, *less the $2,355 written off.*" *Id.* The italicized number appears to have been miscalculated. Leopold's proposed write-offs of $774.20 and $1,607.80 add up to $2,382, not $2,355. *See* Dkt. 50 at 14.

For the reasons explained below, the Court declines to reduce Plaintiff's requested fee award by 80%. Because Plaintiff prevailed on every legal issue litigated in the case, he achieved more than minimal success. Furthermore, careful review of Plaintiff's timesheets reveals that Plaintiff's claimed hours are, in general, reasonable. The Court will, however, reduce Plaintiff's fee award to account for the Secret Service's failure to find any records responsive to Plaintiff's request, inefficient litigation tactics, and some instances of duplicative or excessive billing.

1. *Degree of Success*

The reasonableness of a requested fee award turns, in significant part, on the "results obtained" from the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This inquiry entails two distinct analyses. *See id.* at 434. First, a court may exclude hours from the lodestar amount for "nonproductive time or for time expended on issues on which [the] plaintiff ultimately did not prevail." *Bloomgarden v. U.S. Dep't of Just.*, 253 F. Supp. 3d 166, 175 (D.D.C. 2017) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1499 (D.C. Cir. 1984)). Once such hours have been excluded, the court "must also 'consider whether the success obtained on the remaining claims is proportional to the efforts expended by counsel.'" *Id.* (quoting *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992)). Otherwise, "the 'hours reasonably expended on the litigation as a whole . . . may be an excessive amount.'" *Id.* (quoting *Hensley*, 461 U.S. at 434). In this Circuit, district courts often reduce compensable hours across the board to account for litigants' degree of success. *See id.* (collecting cases).

The Court agrees that Judge Faruqui understated Plaintiff's degree of success. Plaintiff prevailed on every legal issue that the parties actually litigated. First, although the Secret Service initially declined to conduct a text-message search, after the pre-summary judgment conference—during which the Court indicated that such a search would be appropriate—the

Secret Service undertook a text-message search. *See* Sept. 25, 2025, Hrg. Tr. (Rough at 2); Dkt. 34 at 15. More importantly, the Court agreed with Plaintiff about the three issues litigated at summary judgment: (1) whether the Secret Service unreasonably refused to search for the odd numbered parts of Plaintiff's FOIA request, Dkt. 25-1 at 11; (2) whether the Secret Service used unreasonably narrow search terms, *id.* at 12; and (3) whether an additional search would be futile, *id.* at 17. Although the futility of an additional search presented "a close question," Dkt. 34 at 28, the Secret Service's assertion that "it is highly unlikely that any responsive documents exist" was insufficiently certain to establish futility, *id.* at 29–30. With respect to the odd-numbered requests, the Court concluded that the Secret Service parsed Plaintiff's FOIA request too finely by interpreting it as applying only to the even-numbered parts. *Id.* at 33. Finally, on the "core" question of the adequacy of the Secret Service's search terms, *id.* at 27, the Court concluded that limiting the agency's searches to documents using the phrase "presidential records" was unreasonable, *id.* at 34.

True, the Court denied both parties' motions for summary judgment without prejudice to give the Secret Service another chance to establish futility. *Id.* at 34–35. But the Secret Service chose not to submit another declaration on futility and instead reached an agreement with Plaintiff about the parameters of an additional search. Dkt. 36 at 1. So, not only did the Court agree with Plaintiff about every legal issue; the Secret Service also conducted additional searches that would not have taken place in the absence of litigation. That is more than "minimal success." Dkt. 42 at 13.

Rather than focus on the legal issues actually litigated, Defendants would have the Court reduce Plaintiff's fee award based on the ratio of successful to unsuccessful forms of relief raised in Plaintiff's complaint. *See* Dkt. 49 at 14–15. But "[s]uch a ratio provides little aid in

determining what is a reasonable fee in light of all the relevant factors." *Hensley*, 461 U.S. at 435 n.11. The forms of relief requested in the complaint are poor proxies for the legal issues that Plaintiff actually spent time litigating. *See, e.g.*, *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) (finding a 50% reduction unreasonable where plaintiff obtained injunctive relief but failed to obtain damages because plaintiff "contend[ed] that ninety-two percent of the total hours charged . . . were spent pursuing its demand for injunctive relief").

For example, Defendants contend that Plaintiff was unsuccessful because he did not secure an order requiring Defendants to "produce all non-exempt requested records or portions of records promptly" or enjoining Defendants from "withholding non-exempt public records under FOIA." Dkt. 1 at 5 (Compl. ¶¶ iv–v); Dkt. 49 at 15. But the fact that Plaintiff did not secure such an order does not bear on the reasonableness of Plaintiff's claimed hours. Because the Secret Service did not find any responsive records, Plaintiff did not spend any time litigating whether the Secret Service had to produce non-exempt records. He spent only the negligible amount of time it took to include these boilerplate requests in his complaint. It is entirely reasonable for a FOIA plaintiff to include such requests in his complaint before learning whether any responsive records exist. Reducing Plaintiff's attorneys' fees on such a technicality would incentivize inefficient pleading and would not promote the purposes of FOIA fee awards.

Furthermore, focusing on the forms of relief requested in the complaint unjustifiably privileges relief obtained through a "judicial order" over relief obtained through "a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii). In emphasizing the fact that the Court did not "order" the relief Plaintiff obtained, Dkt. 49 at 15, Defendants focus on the form, rather than "the significance of the overall relief obtained by the plaintiff," *Hensley*,

461 U.S. at 435. That runs counter to Congress's intent in amending FOIA to enable plaintiffs who trigger a voluntary change in an agency's conduct to receive attorneys' fees. Whereas Plaintiffs won on every issue that was actually litigated, the fee awards in the cases cited by Defendants were reduced based on issues that the plaintiff litigated and wholly or partially lost. *See, e.g.*, *Clemente v. FBI*, No. 8-1252, 2017 WL 3669617, at *1, *4 (D.D.C. Mar. 24, 2017) (applying one-third reduction because "Plaintiff attained roughly two-thirds of the relief she sought" and litigated through three rounds of summary judgment briefing); *Piper v. U.S. Dep't of Just.*, 339 F. Supp. 2d 13, 24–25 (D.D.C. 2004) (reducing requested fee award by 50% to account for the fact that the government partially prevailed at summary judgment and "plaintiff's manifest private interest in this case"); *Craig v. Mnuchin*, No. CV 14-1340, 2018 WL 6079512, at *27 (D.D.C. Nov. 21, 2018) (reducing requested fee award by 65% because plaintiff "obtained less than ten percent of the compensatory damages the jury could have awarded" and "obtained roughly half of the equitable relief sought" and did not receive the "core relief"); *Radtke v. Caschetta*, 254 F. Supp. 3d 163, 176–77 (D.D.C. 2017) (reducing requested fee award for pre-appellate work by 40% to reflect plaintiff's lack of success on one of four causes of action, multiple theories of wage and hour liability, and multiple theories of secondary liability). And even in these cases, the plaintiffs' fee requests were reduced by less than 80%.

Defendants also defend Judge Faruqui's proposed 80% reduction based on the fact that Plaintiff received no records from the litigation. Although the Court agrees that the existence or non-existence of responsive records may at times be relevant to the attorneys' fee inquiry, it does not warrant such a large reduction in fees. The "ultimate goal of any FOIA requester is, of course, to obtain records from the government." *Mobley v. DHS*, 908 F. Supp. 2d 42, 47 (D.D.C. 2012). But "FOIA defines 'relief' broadly" to include any agency action that is "beneficial" to

the requester, not merely the production of responsive records, *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202 (D.D.C. 2016), and a statement confirming or denying the existence of responsive records can reveal a great deal about the workings of government, *see Mobley*, 908 F. Supp. 2d at 47.

As Judge Lamberth has persuasively explained, penalizing FOIA plaintiffs for the non-existence of responsive records would also "deter legitimate FOIA plaintiffs from bringing suit" because "there is always *ex ante* uncertainty that a search will result in responsive documents." *Protect the Pub.'s Tr. v. Internal Revenue Serv.*, No. 23-cv-340, 2024 WL 663427, at *7 (D.D.C. Feb. 16, 2024). "Not all plaintiffs are able or willing to assume the risk that their search request will not result in responsive records, even in the face of facially unreasonable agency resistance." *Id.* at *8. Moreover, agencies are better positioned to know whether "a particular search request will produce responsive records" and "can easily exploit this imbalance if all it takes to avoid paying attorney's fees"—or most of a plaintiff's fees—"is [changing] position once the plaintiff files suit." *Id.* at *7.

Under this incentive structure, substantial reductions to fee requests based on the non-existence of responsive records creates a significant risk that agency obduracy to FOIA requests will go unchecked. That would frustrate one of the "two main purposes" of awards of attorneys' fees in FOIA cases: "to serve as a 'compensation for enduring an agency's unreasonable obduracy in refusing to comply with [FOIA's] requirements.'" *Barnard v. Dep't of Homeland Sec.*, 656 F. Supp. 2d 91, 97 (D.D.C. 2009) (quoting *LaSalle Extension Univ. v. FTC*, 627 F.3d 481, 484 (D.C. Cir. 1980)). Accordingly, any reduction in fees for failure to obtain responsive records should be based on an *ex ante* evaluation of the likelihood that a particular FOIA request would result in the release of responsive records. Although the failure of the agency to locate

responsive documents might provide confirmation that the request was destined to fail, any such reduction should also account for the fact that the failure to locate responsive records may provide a significant insight regarding the workings of the government. And, finally, any reduction should not, in any event, be so large as to discourage future FOIA requesters from challenging "facially unreasonable agency resistance." *Protect the Pub.'s Tr.*, 2024 WL 663427, at *8.

At the same time, and as the Court recognized in its summary judgment ruling, the likelihood that Plaintiff's FOIA request would yield responsive records was always remote. *See* Dkt. 34 at 28–29. The "Secret Service is very focused on the protection of those with whom the agency is charged with protecting." *Id.* at 29. It "plays no role with respect to presidential records." *Id.* at 28. To the contrary, the Service is incentivized to steer clear of "matters unrelated to their function, because it actually could result in a life-threatening situation for [its protectees]," if those protectees avoid their Secret Service detail to preserve their privacy. *Id.* at 29. That low likelihood was ultimately realized when the Secret Service conducted a search using Plaintiff's preferred search terms, which found no records. Dkt. 40 at 5. Because it was always "highly unlikely," Dkt. 34 at 29—albeit not out of the question—that this suit would result in the discovery of responsive records, the Court concludes that a ten-percent reduction is appropriate. *Cf. Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, No. 118-cv-902, 2023 WL 4892712, at *18 (D.D.C. June 2, 2023) (recommending a five percent reduction in fees to account for failure to return responsive records where plaintiff fended off a motion to dismiss and obtained an additional search, which did provide some public benefit).

2. *Reasonableness of Merits Hours*

Judge Faruqui's proposed 80% reduction was also based on his conclusion that Plaintiff "should not have spent so much time on one round of summary judgment litigation." Dkt. 42 at

14. As Plaintiff points out, and as Defendants concede, Dkt. 49 at 18, that conclusion appears to be based on a factual error. Judge Faruqui stated that Plaintiff's counsel spent "88.7 hours on summary judgment litigation," and cited one case finding 78 hours on an *opposition* to summary judgment unreasonable. Dkt. 42 at 13. But Plaintiff's counsel did not spend 88.7 hours on summary judgment; rather, that is the entire amount of time that Plaintiff spent litigating the case during the merits phase. The 88.7 hours included preparation and filing of the complaint, pre-motion proceedings, negotiations with the Secret Service regarding requested searches, and briefing cross-motions for summary judgment. Dkt. 48 at 10. Of those hours, Plaintiff's counsel spent 54.7 hours on summary judgment proceedings, and unlike the case cited by Judge Faruqui, did not prepare only an opposition brief. *Id.* Because the parties filed cross-motions for summary judgment, Plaintiff's claimed hours include work on his opening brief, statement of facts, and response brief, in addition to oral argument. *Id.*

With those facts clarified, Plaintiff's counsel spent approximately as much time as Judge Faruqui thought reasonable for summary judgment briefing. According to Judge Faruqui, 25 hours is "sufficient to prepare a resistance to a summary judgment motion." Dkt. 42 at 14. That is almost exactly what Plaintiff's counsel spent here. Plaintiff claims 25.3 hours for his opposition and cross-motion for summary judgment, including his statement of facts, Dkt. 48 at 12, and 20.9 hours on his cross-reply brief, Dkt. 50 at 10. *Cf. Coffey v. Bureau of Land Mgmt.*, 316 F. Supp. 3d 168, 172 (D.D.C. 2018) (approving approximately 30 hours to draft a 12-page merits reply and almost 20 hours for an 8-page fees reply); *The Sierra Club v. United States Env't Prot. Agency*, 75 F. Supp. 3d 1125, 1151 (N.D. Cal. 2014) (reducing hours billed for summary judgment motion dealing with one simple legal issue to 25 hours). Furthermore, the 9.5 hours that Plaintiff's counsel spent on oral argument is consistent with what this Court

recently approved in a different FOIA case involving a motion to dismiss. *See Am. Wild Horse Campaign v. United States Bureau of Land Mgmt.*, No. CV 22-2972, 2026 WL 221298, at *7 (D.D.C. Jan. 28, 2026) (approving 36.2 hours for an opposition to a motion to dismiss and 11 hours preparing for and attending oral argument).

The Court will, however, apply an additional 15% reduction to the requested fee to account for its observation in its summary judgment ruling that "this case could have been somewhat expedited." Dkt. 34 at 35. As the Secret Service noted in its summary judgment briefing, shortly after this suit was filed, it "inquired whether Plaintiff could offer any additional search terms to locate potentially responsive records." Dkt. 22-3 at 6 (Tyrrell Decl. ¶ 15). Plaintiff declined to do so until his pre-summary judgment submission to the Court several months later. *Id.*; Dkt. 25-2 at 2 (Leopold Decl. ¶ 11); *see* Dkt. 15 at 4. Had Plaintiff proposed those search terms at the beginning of this litigation, he might have obviated the need for summary judgment proceedings, at least on the "core" issue of whether the Secret Service employed adequate search terms. *See* Dkt. 34 at 35. Although the Secret Service is also at fault for declining to engage in substantive discussions until after it briefed the adequacy of its original search terms and lost on that issue, Plaintiff also bears responsibility for the prolongation of this litigation. This brings the total percentage reduction applied to the requested fee award to 25%.

Defendants further argue that Plaintiff's claimed hours are excessive due to overstaffing and duplicative billing. Although Defendants' concerns are overstated, the Court agrees that a modest reduction is warranted. Work for this case was distributed across five attorneys, one of whom replaced another about halfway through the case due to practice-wide changes. *See* Dkt. 39-1 at 3 (Topic Decl. ¶ 18); Dkt. 39-1 at 45–53 (Proposed Billing Spreadsheet I). That staffing

structure is admittedly unusual in a case as straightforward as this one. But as Plaintiff explains, "dividing work by task instead of case" allows the firm to realize time- and cost-savings by enabling associates to specialize and bill at a lower rate than would be possible if the firm relied on the use of more experienced and expensive employees. *See* Dkt. 39-1 at 2–4 (Topic Decl. ¶¶ 17, 20–21); *cf. Finkelstein v. Nat'l Institutes of Health*, No. 22-cv-02229, 2026 WL 320228 at *6 (D.D.C. Feb. 6, 2026) ("And, as Plaintiff points out, assigning some work to associates or paralegals—whose services are billed at lower rates—likely *reduced* costs.") (emphasis in original); Memorandum Opinion and Order at 21–23, *Eddington v. FBI*, No. 19-cv-2962 (D.D.C. July 25, 2024), ECF No. 63 at 22 (finding concerns about same staffing structure unpersuasive because "multiple attorneys will often reduce the total bill"). Nor is it necessarily unreasonable, as a general matter, for members of a litigation team to meet to discuss the case or for partners to supervise associates. Here, moreover, Plaintiff has exercised sound billing judgment by cutting "time entries for tasks that could be interpreted as duplicative, such as more than one person reviewing a joint status report." Dkt. 39-1 at 2 (Topic Decl. ¶¶ 15–16). In response to Defendants' concerns, Plaintiff has also written off an additional $774.20 of substantive work on his summary judgment briefing and $1,607.80 of substantive work on his fee petition. Dkt. 50 at 14.

After reviewing Plaintiff's timesheets for the merits phase of the litigation, the Court has identified some additional instances of duplicative billing for conferences between multiple attorneys and client calls staffed by multiple attorneys. However, Defendants' proposed 25% reduction to all entries is excessive to address these few instances of duplicative billing. The Court concludes that a lump-sum reduction of $1,250 is sufficient to account for these duplicative entries.

Finally, Defendants argue that an across-the-board reduction of 3% is necessary to account for Plaintiff's failure to contemporaneously record some billing entries. Dkt. 49 at 24–25. To receive fees, attorneys must include with their fee petition "sufficiently detailed information about the hours logged and the work done" to enable the district court and opposing counsel to "make an informed determination" as to the merits of the petition. *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Accordingly, the D.C. Circuit requires "[a]ttorneys who anticipate making a fee application [to] maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* It has cautioned, however, that "the recordkeeping requirement should not be imposed in a draconian manner." *Action on Smoking & Health v. C.A.B.*, 724 F.2d 211, 220 (D.C. Cir. 1984). Although reconstructed billing entries are not per se non-compensable, courts will reduce a fee award "to account for any inaccuracies and overbilling that may have occurred" as a result of substandard timekeeping habits. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011).

Although Plaintiff's timesheets include some entries that were reconstructed, Plaintiff has provided sufficient documentation to enable the Court to gauge the reasonableness of each entry. Plaintiff's timesheets include three types of reconstructed time entries. Dkt. 41-1 at 1 (Topic 2d Decl. ¶ 5). First, Plaintiff's lead counsel, Matthew Topic, consistent with his "standard practice," reviews every court order when it is filed on ECF, "but for purposes of efficiency" does not contemporaneously save that time. *Id.* at 2 (Topic 2d Decl. ¶ 7). Second, "paralegals, as a matter of course, save all court filings in a designated folder." *Id.* at 2 (Topic 2d Decl. ¶ 8). The third category of reconstructed time entries is case-related emails that inadvertently were not contemporaneously recorded. *Id.* at 2 (Topic 2d Decl. ¶ 9). For billing purposes, someone

identifies all relevant court orders, court filings, and non-contemporaneously recorded emails and assigns them 0.1 hours. *Id.* at 2 (Topic 2d Decl. ¶¶ 7–9).

Based on lead counsel's description, there is no reason to doubt that any of the reconstructed tasks occurred. The saving of court filings in a designated folder and case-related emails are both objectively verifiable, and Topic avows that he "ha[s] not deviated" from his standard practice of reviewing all court orders "under any circumstances." *Id.* at 2 (Topic 2d Decl. ¶ 7). Furthermore, each reconstructed entry has been billed at the minimum increment, reducing the risk that the reconstructed entries overstate the amount of time spent on particular tasks. That said, even though time spent reviewing court orders may be compensable when billed at the minimum increment, the Court finds it unreasonable to award fees for Topic's review of court orders in this case. It is implausible that it took six minutes to review each of the court's brief orders, the vast majority of which merely set deadlines. The Court will therefore deduct the 1.9 hours that Topic spent reviewing court orders during the merits portion of the case, in the amount of $1370.70. *See* Dktr. 39-1 at 43–51.[2]

As for the other two categories of tasks featured in the reconstructed entries, the Secret Service has not argued that those tasks are non-compensable. *See* Dkts. 40, 49. Nor has it identified any way in which the reconstructed time entries interfered with its ability to "make an informed determination as to the merits of the application," *Concerned Veterans*, 675 F.2d at 1327, or led to overbilling. *See* Dkts. 40, 49. Plaintiff's method of reconstructing the two other categories of tasks is far from the "[c]asual after-the-fact estimates," *Concerned Veterans*, 675 F.2d at 1327, that have led to fee reductions in other cases. *See, e.g.*, *Kennecott Corp. v. E.P.A.*,

[2] The Court counts and deducts only those entries with descriptions that are limited to review of a court order. It does not deduct entries involving another task as well, such as reviewing an order and drafting an email about the order.

804 F.2d 763, 767–68 (D.C. Cir. 1986) (reducing fees where reconstructed entries listed tasks performed each month and did not indicate how much time had been spent on each task); *Citizens for Resp. & Ethics in Washington*, 825 F. Supp. 2d at 230–231 (D.D.C. 2011) (reducing fees where attorneys kept daily time sheets indicating the number of hours spent on specific cases but reconstructed the specific tasks performed for those cases based on docket sheet, case files, and periodic notes). Because Plaintiff's reconstructed entries are limited to discrete categories of tasks, reasonably accurate, and billed at the minimum time increment, the Court declines to apply Defendant's proposed across-the-board 3% reduction. *See, e.g.*, *Harvey v. Berryhill*, No. CV 13-1957, 2017 WL 2560909, at *7 (D.D.C. June 13, 2017) (declining to reduce plaintiff's requested fee award based on lack of contemporaneous billing).

3. *Fees on Fees*

Finally, Judge Faruqui recommended an 80% reduction to Plaintiff's requested fees on fees, commensurate with his proposed reduction to the rest of Plaintiff's award. Dkt. 42 at 14. Defendants characterize Plaintiff's requested fees-on-fees award as "excessive" and propose that the Court reduce Plaintiff's fees on fees to $10,000. Dkt. 49 at 25. They propose, in the alternative, that the Court reduce Plaintiff's fees on fees by the same percentage as any reduction to Plaintiff's main fee petition. Dkt. 49 at 20, 26 n.7.

It is well settled that "hours reasonably devoted to a request for fees are compensable," so long as they are "not excessive." *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 326 (D.D.C. 2020) (citation modified). The Court must "scrutinize" fees on fees to ensure that the total is reasonable "and does not represent a windfall for the attorneys." *Id.* at 327 (citation modified). "In assessing this factor, courts consider whether the fees-on-fees award would be a 'disproportionately large amount' compared to the fee award for the non-fee aspects of the litigation." *Los Padres ForestWatch*, 775 F. Supp. 3d at 373.

At the time of Judge Faruqui's Report and Recommendation, Leopold had requested $24,627.30 in fees on fees. Dkt. 42 at 13 n.2. That accounts for nearly 31% of his total fee request before Judge Faruqui, which represents a relatively high percentage share of the total litigation cost for fees on fees. *See Urb. Air Initiative*, 442 F. Supp. 3d at 327) (concluding that a fees-on-fees request representing nearly 30% of total litigation cost was excessive); *Louise Trauma Ctr. LLC v. United States Dep't of Homeland Sec.*, No. 1:20-CV-01128, 2023 WL 3478479, at *7 (D.D.C. May 16, 2023) (concluding that a fees-on-fees request equivalent to nearly 30% of total litigation cost was excessive). A percentage share of total litigation costs, however, is not dispositive of the reasonableness of a request for fees on fees. *See Protect the Pub.'s Tr.*, 2024 WL 663427 at *13–14 (declining to reduce fees-on-fees award which represented 70% of the total litigation cost); *Am. Wild Horse Campaign*, 2026 WL 221298, at *8–9 (reducing fees-on-fees award to 100% of the fees-on-the-merits award). Defendants rely almost exclusively on the percentage share; they do not identify any time entries that are redundant or unnecessary. They suggest that it is unreasonable for Plaintiff to seek more fees for his reply brief than for his original petition, noting that his reply was two pages shorter than the petition. Dkt. 49 at 26. Considered in context, that contention is unpersuasive. The difference between Plaintiff's fee request for his original petition and his reply brief amounts to about three hours sought, *compare* Dkt. 39-1 at 53 with Dkt. 41-1 at 3, which reasonably reflects the additional time needed to review Defendant's response and to research and respond to new issues raised in that response. It is also reasonable given that more of Plaintiff's reply brief was dedicated to legal argument, which takes longer to draft.

The Court's review of Plaintiff's timesheets reveals that, in general, Plaintiff's claimed fees-on-fees hours were spent reasonably, especially given the Secret Service's decision to brief

nearly every aspect of Plaintiff's eligibility for and entitlement to fees. The Court also notes with approval that Plaintiff wrote off $1,607.80 of substantive work on his fee petition in response to Defendants' concerns about duplicative billing. *See* Dkt. 50 at 14. And while Plaintiff's fees-on-fees request increased after briefing his objections to the R&R, the Court finds it reasonable for Plaintiff to have objected to such a steep reduction in his fee award. Defendants' proposal that the Court reduce Plaintiff's fees-on-fees award to $10,000 is therefore unnecessary to right-size Plaintiff's fees-on-fees award.

The Court agrees, however, that it is appropriate to reduce Plaintiff's fees-on-fees commensurate with the reduction of the rest of his award. Courts "regularly conclude that fees on fees should be reduced to exclude time spent on unsuccessful fee requests." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 297 (D.D.C. 2016); *see also I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 72 (D.D.C. 2019) (reducing fees on fees commensurate to reduction in merits award). The Court accordingly applies a 25% reduction to the fees on fees awarded. Moreover, the Court applies an additional 2% reduction to the fees on fees to compensate for any time Plaintiff spent reconstructing entries. Although reconstructed billing entries are compensable, in light of this Circuit's strong preference for contemporaneous time records, Plaintiff should not receive fees for time spent reconstructing billing entries. Finally, the Court will also deduct $602 from Plaintiff's fees-on-fees award to exclude instances of duplicative billing or reconstructed entries for reviewing court orders.

In sum, Plaintiff's requested primary award of $55,147.70, less the aforementioned deductions, and subject to a 25% reduction, yields a primary fee award of $38,814.60. The

$24,627.30 in fees on fees requested before Judge Faruqui, plus the subsequent fees-on-fees requests and less the aforementioned deductions, and subject to a 27% reduction, yields a fees-on-fees award of $29,180.80.

**CONCLUSION**

For the foregoing reasons, the Magistrate Judge's R&R is **ADOPTED** in part and **MODIFIED** in part. Plaintiff's motion for attorneys' fees, Dkt. 39, is hereby **GRANTED**, and Plaintiff is hereby **AWARDED** reasonable attorneys' fees and costs in the amount of $38,814.60, plus fees on fees in the amount of $24,627.30, for a total award of $67,995.40.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 30, 2026